**Opinion filed March 21, 2013**



## In The

# Eleventh Court of Appeals

_____

## No. 11-11-00101-CR

_____

### JASON CORNELIUS EDMONDSON, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 403rd District Court**
**Travis County, Texas**
**Trial Court Cause No. D-1-DC-09-200422**

### O P I N I O N

The jury convicted Appellant, Jason Cornelius Edmondson, of the first-degree felony of knowingly possessing four or more but less than two hundred grams of cocaine with the intent to deliver.[1]  The trial court assessed punishment at ten years confinement and sentenced Appellant accordingly.  We affirm.

### I. Background and Trial Evidence

Officer William Norrell of the Austin Police Department called the telephone number of an alleged drug dealer, "J-Rock," and agreed to purchase one-half ounce of cocaine for $250. Officer Norrell arranged for J-Rock to call him when J-Rock arrived at a specific hotel, and

---

[1]*See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d) (West 2010).

Officer Norrell would then direct him to a particular room. Plainclothes officers conducted surveillance around the hotel. When Appellant appeared at the specified room, a uniformed team moved in to arrest him.

Appellant saw the officers, started to flee the scene, and threw a plastic bag over the second floor railing as he fled. Officer David Smith located a plastic bag of crack cocaine, while Sergeant Eric Delossantos apprehended Appellant after he saw Appellant jump from the second floor railing to the ground floor. Appellant's fingerprints were not found on the discarded bag of crack cocaine, and he contended at trial that it did not belong to him. Appellant solicited testimony from Sergeant Delossantos that, during the arrest, Appellant was yelling that all he had on him was a bag of marihuana.

## II. Issues on Appeal

Appellant complains in four points of error that the trial court erred when it (1) granted the State's challenges for cause to four veniremembers, (2) overruled Appellant's objection to the State's closing argument where Appellant claimed that the State commented on his failure to testify, (3) admitted evidence of an extraneous offense during the punishment phase because the State failed to give reasonable notice, and (4) admitted two out-of-court statements during the punishment phase that violated the Confrontation Clause of the United States Constitution and Texas constitution and also were inadmissible hearsay because the out-of-court statements were not excited utterances.

## III. Standards of Review

We review a trial court's ruling on veniremember challenges first to see if a proper objection was made. To preserve a complaint for appellate review, the party must timely object and specify the grounds that support the objection. TEX. R. APP. P. 33.1; *see also Guzmon v. State*, 697 S.W.2d 404, 413 (Tex. Crim. App. 1985); *Hawkins v. State*, 660 S.W.2d 65, 81 (Tex. Crim. App. 1983). We review alleged improper jury arguments, and the court's ruling, "in light of the arguments, information, and evidence that was available to the trial court at the time it ruled." *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003). A complaint on appeal that differs from the objection before the trial court has not been preserved for our review. *Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990).

We review extraneous offense evidence admissions under an abuse of discretion standard. A timely and specific objection to the admissibility of evidence preserves the error for

our review. Rule 33.1. "The admissibility of an out-of-court statement under the exceptions to the general hearsay exclusion rule is within the trial court's discretion." *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). "We review a trial court's decision to admit evidence over objection under an abuse of discretion standard and will not reverse that decision absent a clear abuse of discretion." *Apolinar v. State*, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005). A trial court abuses its discretion only when the decision lies outside that zone of reasonable disagreement. *Zuliani*, 97 S.W.3d at 595.

## IV. Analysis

### A. Voir Dire

Appellant complains in his first point of error that the trial court erred when it granted the State's challenge for cause as to Veniremember Nos. 13, 38, 42, and 49 without first giving Appellant the opportunity to attempt to rehabilitate them. The State argues that the trial court did not err when it dismissed Veniremember Nos. 13 and 38 because those veniremembers were dismissed by agreement of the parties. Because Appellant agreed to dismiss Veniremember Nos. 13 and 38 and did not object to their dismissal at any time, he waived any complaint on appeal. Rule 33.1(a). Likewise, we agree with the State that Appellant waived his complaint as to Veniremember Nos. 42 and 49 when he failed to object at trial. Although Appellant affirmatively stated that he "[could not] agree to 42" and "would not agree" to Veniremember No. 49, he failed to object or offer grounds to support his objection, and under Rule 33.1(a), he waived any complaint on appeal. Appellant's first point of error is overruled.

### B. Improper Jury Argument

The State's contention during its closing argument was that Appellant intended to sell the drugs he possessed rather than use them, and the following occurred:

> [PROSECUTOR]: That man is not a drug user. Does that look like an emaciated crack addict with burned fingers and burned lips who is thin and frail?
>
> [DEFENSE COUNSEL]: Judge, that is improper. That's just improper.
>
> [PROSECUTOR]: Judge, it's final argument.
>
> THE COURT: Objection overruled.

In his second point of error, Appellant argues that the jury argument "when viewed from the jury's standpoint, the jury would naturally and necessarily take [the prosecutor's comment on

his appearance during closing argument] as a comment on Appellant's election to not testify." A complaint on appeal that differs from the objection before the trial court has not been preserved for our review. *Rezac*, 782 S.W.2d at 870. Appellant's objection that the argument was "improper" appeared to be that the prosecutor was improperly commenting on Appellant's courtroom appearance or demeanor. *See Good v. State*, 723 S.W.2d 734, 737 (Tex. Crim. App. 1986) (inviting the jury to speculate upon a defendant's courtroom demeanor to find him guilty improperly encourages the jury to find guilt based on appearance in the courtroom instead of on the evidence). Appellant complains on appeal that the statement was a comment on his failure to testify. Because Appellant's complaint on appeal does not comport with his objection at trial, he failed to preserve error for our review. *See Rezac*, 782 S.W.2d at 870 ("An objection stating one legal basis may not be used to support a different legal theory on appeal."). Appellant's second point of error is overruled.

### C. Extraneous Offenses

Appellant's third point of error is that the trial court abused its discretion when it admitted evidence of extraneous bad acts because the State failed to give reasonable notice of its intent to use the evidence at trial. Specifically, Appellant complains that the trial court erred when it permitted Appellant's former community supervision officer to testify that Appellant (1) failed a urinalysis test, (2) failed to maintain suitable employment, and (3) failed to complete a substance abuse assessment. We first note that, when the community supervision officer was asked whether Appellant ever tested positive for drugs, she answered, "No." This is not evidence of a "bad" act, so our review is limited to the testimony concerning employment and the substance abuse assessment.

The State offered several exhibits during the punishment phase, including three exhibits that showed Appellant had three convictions in 2003 and had received concurrent probated sentences in all three cases. Each of the three exhibits included either the motion to revoke or the judgment revoking community supervision. The motions alleged that Appellant failed to "work faithfully at suitable employment" and failed to "report to a drug and alcohol evaluation," and the judgment reflected the same grounds for revocation. The trial court admitted the exhibits over Appellant's lone objection that the documents "lack sufficient affirmative links" to him.

The State subsequently called Appellant's community supervision officer as a witness. When the State asked whether Appellant remained employed and whether he completed a

substance abuse assessment, Appellant objected because he did not receive notice that the State intended to introduce such evidence. Although Appellant objected to the testimony due to lack of notice, exhibits stating those grounds for revocation had already been admitted into evidence. "[I]t is well settled that an error in admission of evidence is cured where the same evidence comes in elsewhere without objection." *Hudson v. State*, 675 S.W.2d 507, 511 (Tex. Crim. App. 1984). Appellant's first objection to the exhibits was limited to the absence of an affirmative link; he did not object to a lack of notice. By not objecting to the lack of notice each time the evidence of community supervision violations was offered, any alleged error in admitting the testimony was cured by the exhibits already in evidence. Appellant's third point of error is overruled.

### D. Out-of-Court Statements

Appellant's last point of error is that the trial court erred during the punishment phase when it admitted testimony from Austin Police Detective Ken Hubbs concerning two out-of-court statements made by Laquisha Clemons. Appellant argues (1) that one or both statements violated the Confrontation Clause of the United States and Texas Constitutions and (2) that the statements were inadmissible hearsay.

### 1. Confrontation Clause

We note that Appellant's brief contains only one conclusory sentence stating that both statements were "testimonial in nature." Appellant's briefing on the Confrontation Clause issue lacked citation to legal authority, discussion, or substantive analysis. *See Rough Creek Lodge Operating, L.P. v. Double K Homes, Inc.*, 278 S.W.3d 501, 508 (Tex. App.—Eastland 2009, no pet.) (explaining that TEX. R. APP. P. 38.1(i) "requires a specific argument and analysis showing that the record and the law support the contention"). Because he fails to show that the record and the law support his argument, Appellant has waived any complaint that he may have had regarding a Confrontation Clause violation. *See* Rule 38.1(i). We now turn our analysis to Appellant's hearsay objections to the trial court's admission of two out-of-court statements as "excited utterances."

### 2. Hearsay

Appellant challenged the admission of two out-of-court statements by Clemons, arguing that they were not excited utterances under the hearsay exception. In the first statement, a detective testified that Clemons repeatedly yelled at Appellant to tell the officers that the drugs

5

were Appellant's drugs.  In the second statement, the detective testified that Clemons said that Appellant was a drug dealer, that he had brought over the bottle of Xanax the night before, and that he gave Clemons drugs in exchange for free rent.

Hearsay statements must fall within a recognized exception to be admissible.  TEX. R. EVID. 802.  An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" and is such an exception to the hearsay rule.  TEX. R. EVID. 803(2).  The excited utterance exception derives from the belief that a statement is involuntary when made as a result of a startling event or condition and, thus, the declarant lacks an adequate opportunity to fabricate.  *Hunt v. State*, 904 S.W.2d 813, 816 (Tex. App.—Fort Worth 1995, pet. ref'd).  The lack of time to reflect and formulate a statement ensures enough trustworthiness to circumvent the problems with hearsay generally.  *Id.*

There are three considerations when applying the excited utterance exception: (1) the reaction to the startling event should be quick enough to avoid the possibility of fabrication; (2) the resulting statement should be sufficiently "related to" the startling event to ensure the reliability and trustworthiness of that statement; and (3) the "exciting event" should be startling enough to evoke a truly *spontaneous* reaction from the declarant.  *McCarty v. State*, 257 S.W.3d 238, 241 (Tex. Crim. App. 2008).  Appellant contends that Clemons's first statement falls short of an excited utterance under either of the first or second considerations.  Appellant's challenge to Clemons's second statement is limited to the third consideration.  We will address each of Appellant's arguments by analyzing each consideration.

### i. Time Lapse

Appellant challenges that the first statement was not made within the time span required for an excited utterance.  Appellant argues that, even if the first statement relates to a startling event, it was made after Clemons "calmed down" and while Clemons "was angry" at Appellant rather than "gripped by excitement at the police presence in her home."  Under this consideration for excited utterances, the critical question is not the type of emotion that dominates the declarant but whether, at the time of the statement, "the declarant was still dominated by the emotions" caused by the startling event or condition.  *Zuliani*, 97 S.W.3d at 596.  Factors that courts consider in making this determination include the lapse of time between the startling event and

6

statement, the declarant's demeanor, and whether the statement was self-serving or a response to a question. *Apolinar*, 155 S.W.3d at 190.

Detective Hubbs testified that he executed a search warrant at the home of Clemons, who arrived while the search was in progress. After explaining the search and providing her with a copy of the warrant, officers searched her purse and found "a small bag of marijuana as well as a half tablet of Xanax" that matched Xanax found in her bedroom. The detective described her as "very agitated and angry, not with us, but with [Appellant]." Clemons was yelling at Appellant and repeated herself "over and over again." While it is unclear how much time had elapsed, the statement occurred while the search was still in progress and while Clemons was yelling, angry, and agitated; therefore, the trial court's decision to admit the statement was not unreasonable.

### ii. Relatedness

Appellant also argues that Clemons's first statement was not an excited utterance because it was "unrelated" to the search and was simply "her attempt to spread the blame to Appellant." The statement occurred after Clemons arrived home to find police searching her house for drugs. Appellant lived at the house, along with three others, and he was present when police arrived. The case agent testified that Clemons was "very agitated and angry" with Appellant and continually yelled, "Jason, you need to tell them these pills are yours, this stuff is yours."

The parties agree that the startling event here was the search for drugs. In fact, Appellant characterized the statements as being made after Clemons "was confronted with the fact that Xanax and alprazolam were found next to her driver's license in her bedroom." The record shows that the object of the search was drugs, that Clemons was arrested for possession of Xanax, and that Appellant had brought an ounce of crack and a bottle of Xanax to Clemons's home the night before. Based on these facts, it was reasonable for the trial court to conclude that Clemons's statement related to either the search or the previous night's events. *See McCarty*, 257 S.W.3d at 240 (explaining that an excited utterance that is triggered by a startling event may relate to the starting event or "to a much earlier incident").

### iii. Exciting or Startling Event

Appellant claims that Clemons's second statement was not an excited utterance because the statement was not made under the stress of excitement caused by a startling event. Appellant contends that, because the record reveals that Clemons had a long history of prior arrests, being "under arrest in the back of a police vehicle being transported to jail" was not a startling event.

The State characterizes the startling event that triggered the second statement as "the search of her home and her arrest."

The startling event that triggers an excited utterance need not necessarily be the crime itself, and a series of events can cause the excited condition. *McCarty*, 257 S.W.3d at 242; *Bondurant v. State*, 956 S.W.2d 762, 766 (Tex. App.—Fort Worth 1997, pet. ref'd). The second statement occurred after Clemons had been arrested and placed in a "raid van" that seats twelve to fifteen people. Law enforcement officers had read Clemons her *Miranda*[2] rights, and she said that she understood her rights. Appellant was not arrested, but was "issued a citation for misdemeanor possession of marijuana." Detective Hubbs testified that he sat across from Clemons in the raid van, that Clemons's voice was high-pitched, and that he saw actual tears on her face. Detective Hubbs described her as "hysterical" and crying and further explained that Clemons "kept shaking her head and kept mumbling like, I can't believe this is happening, I can't believe he's going to let us take the fall for this."

Detective Hubbs testified that he did not ask Clemons any questions. Regardless, Clemons told the officer that Appellant was a drug dealer, that he gave her marihuana in exchange for free rent, and that Appellant had brought an ounce of crack cocaine and a bottle of Xanax to her home the evening before. According to Clemons, Appellant "had given her one pill," of which she took one-half and saved one-half, but the bottle of Xanax belonged to Appellant.

Here, the trial court could consider Detective Hubbs's testimony that Clemons (1) was hysterical and crying actual tears, (2) had a high-pitched voice, and (3) was shaking her head and mumbling about Appellant letting her take the fall. That evidence, when combined with Clemons's statement, supports a finding that the search for drugs at Clemons's home and her arrest and transport in the raid van were startling events. Although Clemons had been arrested on many occasions, the trial court could have reasonably concluded that being searched, arrested, and transported in a "raid van" for drugs that she claimed belonged to Appellant was a startling event or condition.

We cannot say, based on the foregoing analysis, that the trial court's decision to admit the statements fell outside the zone of reasonable disagreement and constituted an abuse of

---

[2]*Miranda v. Arizona*, 384 U.S. 436 (1966).

discretion.  Therefore, we hold that the trial court did not abuse its discretion when it admitted Clemons's statements as excited utterances.  Appellant's fourth point of error is overruled.

*This Court's Ruling*

We affirm the trial court's judgment.


MIKE WILLSON

JUSTICE


March 21, 2013

Publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.

9