

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| JOHN BERRY JACKSON, | § | No. 08-19-00174-CR |
| Appellant, | § | Appeal from the |
| v. | § | 132nd Judicial District Court |
| THE STATE OF TEXAS, | § | of Scurry County, Texas |
| Appellee. | § | (TC# 10639) |

## **O P I N I O N**

Appellant John Berry Jackson was convicted by a jury of one count of a third-degree felony for assault on a family member, having been previously convicted of an assault against a family member in 2011. Appellant contends that his trial counsel was ineffective for failing to properly stipulate to the existence of his prior conviction and for instead agreeing to allow the State to introduce his 2011 judgment of conviction into evidence during the guilt-innocence phase of his trial. Appellant further contends that the trial court erred in admitting the charging document in his 2011 case into evidence. In addition, Appellant contends that the trial court erred in overruling his objection to the State's allegedly improper jury argument in which the prosecutor referred to matters outside the record during closing arguments. Finding no reversible error, we affirm the

1

trial court's judgment.[1]

## I. FACTUAL BACKGROUND

Because each of the issues that Appellant raises requires a deep dive into whether any error harmed Appellant, we set out a detailed version of the facts, gleaned from the witnesses called at trial.

In February of 2018, Appellant moved into the home that the victim, "K.J.," shared with her three daughters. At trial, K.J. testified that during the evening hours of November 9, 2018, Appellant had been in the backyard smoking meat in a BBQ pit, and became upset when he entered the house and found her asleep on the couch with her youngest daughter. Apparently disturbed that she was spending time with her daughter, rather than with him, Appellant poked her and pinched her legs before returning outside. K.J. then went into the couple's bedroom, and when Appellant joined her there sometime around midnight, a verbal altercation ensued that soon turned physical.

K.J. recalled that Appellant hit her in the face, and then pushed her down on the bed, grabbing her by the neck and squeezing her neck for up to minute, causing her to have trouble breathing. K.J. kicked Appellant in an attempt to escape, but Appellant responded by punching her in the chest with his fist, and he then grabbed her by the hair and again threw her down on the bed, twisting her leg. Appellant thereafter began choking K.J. a second time, again squeezing her neck and impeding her breathing, but stopped after approximately a minute, telling K.J. that she "wasn't worth it." K.J. recalled that she was screaming throughout much of the ordeal, but was

---

[1] This case was transferred from the Eastland Court of Appeals, and we apply the precedent of that Court to the extent required by TEX.R.APP.P. 41.3.

unable to scream during the periods when Appellant was choking her. After Appellant left the bedroom, her middle daughter, M.J., came into the room to tell her that she had called the police.

M.J., who was 18 years old at the time of trial, testified that she called the police after hearing banging noises coming from the bedroom and after hearing her mother scream for help. She explained that she was concerned in part because she believed Appellant had been physically violent with her mother in the past. M.J. testified that although she had not personally witnessed any prior incidents of physical violence between Appellant and her mother, she had been told about them from an unspecified source. In addition, M.J. recalled that approximately two weeks before this incident, she had observed bruising on her mother's nose and what appeared to be two black eyes. When M.J. confronted her mother about her injuries, K.J. claimed that a door had hit her. M.J. responded that she was not "stupid" or "dumb" and that she knew where the injuries came from, informing her mother that it was not "okay for a man to be hitting [her]." At the time, her mother told M.J. to "leave it alone," but warned M.J. that if she heard her yelling in the future it was because her life was in danger and that M.J. should call the police. M.J. further observed that during the time Appellant lived with their family, he would become upset with her mother when she spent time with her daughters, and her mother would then "pay the price," by "getting hit, pinched, pushed, shoved up against the wall [and] choked" by Appellant.

When the police arrived on the scene the morning of the assault, M.J. and her mother were on the front porch, and Appellant was in the couple's bedroom. According to one of the officers, Appellant appeared to be feigning sleep, and purported to be unaware of why the police had been called. When questioned about the assault, Appellant claimed that he had been smoking meat in the couple's backyard all night, and therefore could not have committed the assault. The officer also recalled that she observed a cut under Appellant's eye, but when asked how he had incurred

3

it, Appellant initially refused to respond; however, Appellant later informed the officer that he had received the cut when K.J. kicked him, but provided no further explanation.

At the scene, the officer observed red marks and injuries on K.J.'s face and neck, including a "busted lip" and scratches, and she later observed injuries to K.J.'s chest and thigh. The officer further testified that the red marks on K.J.'s neck resembled a handprint, and she believed, based on her training, that the marks were consistent with being "grabbed by the neck" and choked. In addition, the other officer on the scene took photographs of K.J.'s injuries, which were introduced into evidence at Appellant's trial.

K.J. initially informed the officers that she wanted to press charges against Appellant, and she further agreed to accompany the officers to the police station where she gave them a written statement. However, two days later, she asked that the prosecution be stopped, explaining at trial that she did so because she believed Appellant was a "good guy," who "just gets angry when he drinks." The prosecutor, however, declined to terminate the prosecution, and K.J. thereafter agreed to cooperate with the prosecution and to testify at trial.

Appellant was charged by indictment with one count of assault on a family member, by "intentionally, knowingly or recklessly [causing] bodily injury to [K.J.] a person with whom the defendant had . . . a dating relationship, by squeezing the neck of [K.J.] with his hands, and before the commission of the charged offense [Appellant] had previously been convicted of an offense under Chapter 22 of the Texas Penal Code against a member of [his] family" in April of 2011. At trial, with Appellant's agreement, the State presented a copy of the judgment of conviction from the prior family violence assault that was alleged in the indictment. Appellant, however, objected when the State sought to introduce a copy of the charging document that was filed in that matter.

4

The trial court overruled the objection, and it was introduced into evidence during the guilt-innocence phase of Appellant's trial.

Following trial, the jury found Appellant guilty as charged in the indictment and sentenced him to a 15-year prison term and a fine of $1,500. This appeal followed.

## II. ISSUES ON APPEAL

To facilitate our analysis, we take the issues Appellant presents in the order that we find most logical. First, we address Appellant's contention that he was denied the effective assistance of counsel because of his trial counsel's failure to stipulate to the existence of his prior conviction and his agreement to allow the State to introduce the judgment of conviction into evidence. Next, we consider Appellant's contention that the trial court erred by overruling his objection to the admission of the charging document that was filed in the previous case, and for allowing it to be introduced into evidence during the guilt-innocence phase of his trial. Finally, we address Appellant's contention that the trial court erred in overruling his objection to the prosecutor's closing argument in which the prosecutor referred to matters outside the record.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

In Issue Three, Appellant contends that his trial counsel was ineffective for failing to properly stipulate to his prior judgment of conviction, and for instead allowing the judgment of conviction to be introduced into evidence. The State counters that the record is not sufficiently developed to support his claim of ineffective assistance of counsel on direct appeal. We agree with the State.

### A. Standard of Review and Applicable Law

Under the Sixth Amendment to the United States Constitution and Section Ten of Article 1 of the Texas Constitution, a criminal defendant is entitled to be represented by effective, competent

5

counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex.Crim.App. 2011), *citing* U.S. CONST. amend. VI and TEX.CONST. art. 1, § 10. A criminal defendant, however, is not entitled to a flawless performance from counsel; "isolated lapses or mistakes during the trial are not necessarily indicative of ineffectiveness." *Calderon v. State*, 950 S.W.2d 121, 128 (Tex.App.--El Paso 1997, no pet.), *citing McFarland v. State*, 845 S.W.2d 824, 843 (Tex.Crim.App. 1992) (en banc). Rather, the defendant must show that counsel's performance was deficient to the extent that counsel failed to function as the "counsel" guaranteed by the Sixth Amendment. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App. 1994) (en banc). To prevail on a claim of ineffective assistance of counsel, Appellant must establish by a preponderance of evidence that (1) the attorney's performance was deficient, and that (2) the deficient performance deprived him of a fair trial. *Strickland*, 466 U.S. at 687; *Ex parte Chandler*, 182 S.W.3d 350, 353 (Tex.Crim.App. 2005). Appellant must satisfy both *Strickland* elements, and the failure to show either deficient performance or prejudice will defeat the claim. *Perez v. State*, 310 S.W.3d 890, 893 (Tex.Crim.App. 2010); *Rylander v. State*, 101 S.W.3d 107, 110-11 (Tex.Crim.App. 2003) (en banc).

Under the first prong of the *Strickland* test, Appellant must show the attorney's performance fell below an objective standard of reasonableness. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex.Crim.App. 1999). Stated otherwise, he must show that counsel's actions do not meet the objective norms for professional conduct of trial counsel. *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex.Crim.App. 2002) (en banc). We presume, however, that the attorney's representation fell within the wide range of reasonable and professional assistance. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex.Crim.App. 2001). Ineffective assistance claims must be firmly founded in the record to overcome this presumption. *Thompson*, 9 S.W.3d at 813; *Coffman v.*

6

*State*, 465 S.W.3d 797, 800 (Tex.App.--Fort Worth 2015, no pet.) (recognizing that an ineffective assistance claim must be "firmly founded in the record," and "the record must affirmatively demonstrate the meritorious nature of the claim."). Consequently, a direct appeal is usually an inadequate vehicle for raising an ineffective assistance of counsel claim because the record is generally undeveloped as to why trial counsel did what he or she did.[2] *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex.Crim.App. 2005); *Thompson*, 9 S.W.3d at 814 n.6.

Generally, in the absence of direct evidence of counsel's reasons for the challenged conduct, an appellate court will assume a strategic motivation if any can be imagined. *Garcia v. State*, 57 S.W.3d 436, 440 (Tex.Crim.App. 2001). In more rare circumstances a court may address an ineffective assistance claim when the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed*, 187 S.W.3d at 392 (internal quotes omitted); *see also Rylander*, 101 S.W.3d at 111 (noting that "trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective"). In deciding whether a case falls into that category, the key question is whether trial "counsel's performance [fell] below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflects the trial counsel's subjective reasons for acting as he did." *See Ex parte Bryant*, 448 S.W.3d 29, 39-40 (Tex.Crim.App. 2014). As the Court of Criminal Appeals has noted, however, this poses a "difficult hurdle to overcome," and a "reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of

---

[2] An application for a writ of habeas corpus is typically the more appropriate vehicle to raise a claim of ineffective assistance of counsel, as such a vehicle allows a defendant to develop the record sufficiently so that his claim can be properly reviewed. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex.Crim.App. 2003), *citing Mitchell v. State*, 68 S.W.3d 640, 642 (Tex.Crim.App. 2002). We also note that in certain circumstances, a defendant may develop the record at a hearing on a motion for new trial. *See Jones v. State*, 133 S.W.3d 307, 312 (Tex.App.--Fort Worth 2004, no pet.). In the present case, however, Appellant did not bring such a motion.

an ineffective assistance claim." *Lopez*, 343 S.W.3d at 143; *see also Salinas v. State*, 163 S.W.3d 734, 740 (Tex.Crim.App. 2005); *Thompson*, 9 S.W.3d at 813-14.

Under the second *Strickland* prong, in a case that was actually tried, the defendant must establish that there is a reasonable probability that but for the attorney's deficient performance, the outcome of the case would have been different. *See Strickland*, 466 U.S. at 694; *Thompson*, 9 S.W.3d at 812. A "reasonable probability" is that which is "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Jackson v. State*, 973 S.W.2d 954, 956 (Tex.Crim.App. 1998) (en banc). We review Appellant's claims with these standards in mind.

**B. Analysis**

In order to understand Appellant's ineffective assistance claim, we first provide some background on the nature of the offense with which Appellant was charged. Appellant was charged with the third-degree felony offense of assault on a family member under Section 22.01(b)(2) of the Penal Code, having been previously convicted of an assault against a family member in 2011.[3] Although the Eastland Court of Appeals has not yet weighed in on the issue of whether the existence of a prior family violence assault conviction is an element of the offense, this Court and the majority of other Texas courts of appeal considering the issue have concluded that, given the language used in the Penal Code provision, a prior conviction is an element of the offense, rather than merely a sentencing enhancement.[4] *See Olivas v. State*,

---

[3] Section 22.01 of the Penal Code provides that an assault is a "Class A misdemeanor, except that the offense is a felony of the third degree if the offense is committed against . . . a person whose relationship to or association with the defendant is described by Section 71.0021(b), 71.003, or 71.005, Family Code, if: (A) it is shown on the trial of the offense that the defendant has been previously convicted of an offense under this chapter, Chapter 19, or Section 20.03, 20.04, 21.11, or 25.11 against a person whose relationship to or association with the defendant is described by Section 71.0021(b), 71.003, or 71.005, Family Code." TEX.PENAL CODE ANN. § 22.01(b)(2). In turn, Section 71.0021 of the Family Code describes a "dating relationship." TEX.FAM.CODE ANN. § 71.0021.

[4] *See Staggs v. State*, 314 S.W.3d 155, 160 (Tex.App.--Houston [1st Dist.] 2010, no pet.); *Vazquez v. State*, No. 03-08-00277-CR, 2009 WL 211685, at *3 n.1 (Tex.App.--Austin Jan. 27, 2009, no pet.) (mem. op., not designated for

No. 08-11-00081-CR, 2013 WL 1182208, at *9 (Tex.App.--El Paso Mar. 20, 2013, no pet.) (not designated for publication) (recognizing that the statute clearly provides that a "prior conviction of family-violence assault is required to raise the underlying misdemeanor offense to a third-degree felony offense," and therefore, the prior conviction may not be considered "merely a punishment enhancement"). And, since both parties appear to agree that the existence of a prior conviction is an element of the charged offense, we will treat it as such for purposes of our analysis.

The Court of Criminal Appeals has held that when the existence of a prior conviction is an element of a charged offense, the State has the burden of pleading and proving its existence as a jurisdictional requirement in the guilt-innocence phase of the defendant's trial. *See, e.g.*, *Robles v. State*, 85 S.W.3d 211, 212-13 (Tex.Crim.App. 2002) (en banc) (discussing jurisdictional requirement in felony DUI case in which State was required to plead and prove the existence of two prior DUI convictions). The Court, however, has recognized the danger of admitting evidence of a defendant's prior convictions in the guilt-innocence phase of a defendant's trial, as upon hearing such evidence, a jury might be tempted to convict the defendant on the "assumption that [he] is a criminal generally or that he is a person of bad character." *See id.* at 213; *see also Tamez*, 11 S.W.3d 198, 202 (Tex.Crim.App. 2000). The Court has therefore held that when a defendant offers to stipulate to the existence of a prior conviction that is an element of the offense, the probative value of evidence of the prior conviction is "substantially outweighed by the danger of unfair prejudice," and it is therefore error to admit evidence of the judgment of conviction itself

_____

publication); *Reyes v. State*, 314 S.W.3d 74, 81 (Tex.App.--San Antonio 2010, no pet.); *Chapin v. State*, No. 05-15-01009-CR, 2016 WL 4421570, at *3 (Tex.App.--Dallas Aug. 19, 2016, no pet.) (mem. op., not designated for publication); *Sheppard v. State*, 5 S.W.3d 338, 340 (Tex.App.--Texarkana 1999, no pet.); *Luna v. State*, 402 S.W.3d 849, 851 (Tex.App.--Amarillo 2013, no pet.); *Edison v. State*, 253 S.W.3d 303, 305 (Tex.App.--Beaumont 2008, no pet.); *Moore v. State*, No. 10-09-00386-CR, 2010 WL 3272398, at *7 (Tex.App.--Waco Aug. 18, 2010, pet. ref'd) (mem. op., not designated for publication).

during the guilt-innocence phase of trial upon the defendant's proffer of such a stipulation. *See Robles*, 85 S.W.3d at 212-213; *see also Tamez*, 11 S.W.3d at 201 (holding that when a defendant agrees to stipulate to a prior conviction, the State is foreclosed from presenting evidence of the conviction during its case-in-chief); *Hernandez v. State*, 109 S.W.3d 491, 494-95 (Tex.Crim.App. 2003) (en banc) (holding that it was error to deny the defendant's motion to stipulate to a prior conviction for jurisdictional purposes, as the defendant's "stipulation would have placed the prior convictions into evidence" and "satisfied the evidentiary requirements regarding stipulations while avoiding the unfair prejudice that would accompany further mention of the convictions."); *Trotter v. State*, No. 03-18-00216-CR, 2019 WL 6223350, at *4 (Tex.App.--Austin Nov. 22, 2019, pet. ref'd) (mem. op., not designated for publication) (a defendant's stipulation to a previous conviction "should suffice when it carries the same evidentiary value as the judgments of prior convictions, yet substantially lessens the likelihood that the jury will improperly focus on the previous conviction or the defendant's 'bad character.' ").

Thus, a trial court has no discretion to reject a properly submitted stipulation to a prior conviction. *Martin v. State*, 200 S.W.3d 635, 638 (Tex.Crim.App. 2006). However, when the defendant does not properly stipulate to the existence of the prior conviction, the State may introduce evidence of the judgment of conviction to meet its burden. *See Davis v. State*, No. 04-15-00602-CR, 2016 WL 4537927, at *1-2 (Tex.App.--San Antonio Aug. 31, 2016, pet. ref'd) (mem. op., not designated for publication); *see also Olivas*, 2013 WL 1182208, at *5 (trial court properly allowed the State to introduce evidence of defendant's prior conviction for assault, family violence to meet its burden of proving the existence of the prior conviction, where defendant did not make a proper stipulation to its existence).

Appellant argues that his trial counsel's failure to properly stipulate to the prior conviction and his agreement to instead allow the State to introduce the prior judgment of conviction into evidence was both deficient and unduly prejudicial to his case, thereby meeting both prongs of the *Strickland* test. On the record before us, however, we cannot agree with either point. First, because this case comes to us on direct appeal, and Appellant did not move for a new trial in the trial court, trial counsel has not had the opportunity to explain his reasons for failing to stipulate to the existence of the prior conviction. In general, when the record is silent as to trial counsel's reasons for taking or not taking a particular action, we will presume that trial counsel had a reasonable strategy for his conduct. *See Garcia*, 57 S.W.3d at 440 (in the absence of direct evidence of counsel's reasons for the challenged conduct, an appellate court will assume a strategic motivation if any can be imagined).

Moreover, we do not agree with Appellant that a reasonable attorney would always stipulate to the existence of a prior conviction when such was an element of an offense necessary for the State to obtain a conviction. The failure to stipulate to the existence of a prior conviction could be considered a reasonable trial strategy if counsel doubted that the State was prepared to prove the existence of the prior conviction beyond a reasonable doubt. *See Vazquez v. State*, No. 03-08-00277-CR, 2009 WL 211685, at *1-2 (Tex.App.--Austin Jan. 27, 2009, no pet.) (mem. op., not designated for publication) (recognizing that the failure to stipulate to the existence of a prior conviction could be considered a reasonable trial strategy as it requires the State to prove this element of the charged offense and reserves to trial counsel the right to challenge its existence); *Martin v. State*, 200 S.W.3d 635, 642 (Tex.Crim.App. 2006) (recognizing that if a defendant "wants the jury to decide the fact of whether he has two prior DWI convictions, he should not stipulate to them and take that element away from the jury). Whether defense counsel here

actually took the gamble to put the State to its burden is fact dependent, based on the defense attorney's knowledge of the prosecutor, or the circumstances of the prior conviction. Accordingly, given the presumption we accord defense counsel in the absence of contrary facts, we conclude that Appellant has not met the first prong of the *Strickland* test.

But even were we wrong in that conclusion, Appellant has not met the second prong of the *Strickland* test. Stated otherwise, the record reveals no reasonable probability that the jury's verdict would have been any different if trial counsel had stipulated to the existence of the prior conviction. Appellant believes he was harmed, in part, by counsel's failure to stipulate to the prior conviction because this failure deprived him of the right to receive a stipulated jury charge. We fail to see, however, how Appellant would have benefitted from a stipulated jury charge. Such an instruction would have simply informed the jury as to the existence and legal effect of the stipulation, and would have informed the jury that the existence of the prior conviction was not in contention. *See id.* at 640-41 (recognizing that when a stipulation is entered, the jury should then be instructed, by whatever means and with whatever words are deemed most appropriate to the parties and the trial court, about the existence and legal effect of the defendant's stipulation). Therefore, such an instruction, rather than helping the defendant's case, actually forecloses the possibility that a jury might find that the State did not meet its burden of proving this element of the offense, and instead benefits the State in proving its case.

More importantly, the record reveals that the State presented overwhelming evidence of Appellant's guilt of the charged offense at trial. As set forth above, the victim herself testified regarding the details of the assault, her daughter testified that she heard her mother screaming for help during the assault, and the record contains ample evidence demonstrating the nature of the injuries K.J. received. And while Appellant attempted to impugn the credibility of the witnesses,

12

he provided no alternative explanation for how K.J. received her injuries nor does the record suggest that any such alternative explanation exists. Accordingly, we cannot say, on this record, that there is a reasonable probability that trial counsel's failure to stipulate to the prior conviction affected the outcome of the jury's verdict, and we therefore conclude that Appellant has not established that he was denied the effective assistance of counsel. *See, e.g.*, *Smith v. State*, No. 03-06-00430-CR, 2007 WL 2066291, at *6 (Tex.App.--Austin July 18, 2007, no pet.) (mem. op., not designated for publication) (failure to properly stipulate to prior conviction did not deprive appellant of effective assistance of counsel where failure did not affect the outcome of the jury's guilty verdict); *see also Vazquez*, 2009 WL 211685, at *2 (concluding that appellant was not denied effective assistance of counsel where he failed to show that the outcome of his trial would have been different had counsel stipulated to a prior conviction or requested a stipulated jury charge).

Appellant's Issue Three is overruled.

## IV. ADMISSION OF THE 2011 CHARGING DOCUMENT

In Issue One, Appellant contends that the trial court erred when it overruled his objection and admitted evidence of the charging document that was filed against him in the 2011 family assault case, and that he was unduly prejudiced by its admission. The State counters that the trial court did not err in admitting the charging document, and that, even if it did, Appellant was not harmed by its admission. Although we believe that the trial court erred in admitting the document, we agree with the State that the error did not affect Appellant's substantial rights and therefore does not mandate a reversal of Appellant's conviction.

13

## A.  Standard of Review

We review a trial court's decision to admit evidence under an abuse of discretion standard. *See Rhomer v. State*, 569 S.W.3d 664, 669 (Tex.Crim.App. 2019).  The trial court abuses its discretion when it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably.  *Id.*, *citing Montgomery v. State*, 810 S.W.2d 372, 380 (Tex.Crim.App. 1990) (en banc).  We are required to uphold the ruling so long as it is within the zone of reasonable disagreement.  *Beham v. State*, 559 S.W.3d 474, 478 (Tex.Crim.App. 2018); *see also Edmondson v. State*, 399 S.W.3d 607, 610 (Tex.App.--Eastland 2013, no pet.).

When the trial court errs in the admission of evidence, we still must assess harm.  The erroneous admission of evidence is considered non-constitutional error that must be disregarded unless it affects the accused's substantial rights.  *See* TEX.R.APP.P. 44.2(b); *see also Haley v. State*, 173 S.W.3d 510, 518 (Tex.Crim.App. 2005).  In general, when determining whether an accused's substantial rights were affected, an appellate court must balance: (1) the severity of the misconduct (*i.e.*, the prejudicial effect), (2) any curative measures, and (3) the certainty of conviction absent the misconduct.  *See Brown v. State*, 270 S.W.3d 564, 572-73 (Tex.Crim.App. 2008), *citing Martinez v. State*, 17 S.W.3d 677, 692-93 (Tex.Crim.App. 2000).  An appellate court should not overturn a criminal conviction for non-constitutional error "if the appellate court, *after examining the record as a whole,* has fair assurance that the error did not influence the jury, or influenced the jury only slightly."  *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex.Crim.App. 2011), *quoting Schutz v. State*, 63 S.W.3d 442, 444 (Tex.Crim.App. 2001).  Our focus is "not on whether the outcome of the trial was proper despite the error, but whether the error had a substantial or injurious effect or influence on the jury's verdict."  *Barshaw*, 342 S.W.3d at 93-94; *see also Tienda v. State*, 479 S.W.3d 863, 881 (Tex.App.--Eastland 2015, no pet.).

**B. Analysis**

The State was required to prove that Appellant was previously convicted of an assault on a family member as an element of the charged offense. And as required by law, at the start of the trial, the State read the indictment against Appellant, which alleged that he had been convicted of such an offense in 2011 in Mitchell County, Texas.[5] And, as explained above, the State introduced a copy of the 2011 judgment of conviction into evidence with Appellant's agreement. The State then sought to introduce the charging document that was filed against Appellant in the 2011 case. At that point, Appellant's attorney objected on the grounds that the document contained hearsay, was not relevant to the State's case, and was unduly prejudicial to Appellant's case. In particular, Appellant's counsel argued that the State had already satisfied the jurisdictional requirement of proving the existence of the prior conviction by the introduction of the judgment of conviction, and that it was therefore unnecessary to introduce the charging document. He further argued that the charging document contained additional details of the prior offense that were inflammatory and therefore damaging to his case. The trial court expressly overruled Appellant's hearsay and relevance objections, but failed to rule on the prejudice ground.

Appellant contends that the trial court abused its discretion in overruling his objection and in admitting the charging document, contending that any relevance the document may have had was substantially outweighed by the possibility of unfair prejudice. *See* TEX.R.EVID. 403 ("court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue

---

[5] Article 36.01 of the Texas Code of Criminal Procedure provides that: "The indictment or information shall be read to the jury by the attorney prosecuting [but when] prior convictions are alleged for purposes of enhancement only and are not jurisdictional, that portion of the indictment or information reciting such convictions shall not be read until the hearing on punishment is held[.]" TEX.CODE CRIM.PRO.ANN. ART. 36.01(a)(1)*; see also Tamez*, 11 S.W.3d at 198 (recognizing that a charging document, alleging the requisite number of prior convictions necessary to establish the defendant's guilt, must be read to the jury at the start of trial). Here, however, the prior conviction was not just for the purposes of enhancement.

delay, or needlessly presenting cumulative evidence"). We agree that the trial court should have excluded the document. Admitting evidence of a defendant's prior convictions during the guilt-innocence phase of a defendant's trial runs the risk of undue prejudice, as a jury may be tempted to convict the defendant based on the "assumption that [he] is a criminal generally or that he is a person of bad character." *See Robles*, 85 S.W.3d at 213. It is therefore an abuse of discretion to admit evidence of a defendant's prior conviction when a defendant has stipulated to its existence. *Id.*; *see also Tamez*, 11 S.W.3d at 201. Following this same logic, we must also conclude that when the State has sufficiently established the existence of a prior conviction, either through a stipulation or as here, through the admission of a prior judgment of conviction, there is no need to admit the charging document in the case. Just as the admission of the prior conviction runs the risk of unduly prejudicing a defendant, so too does the admission of the prior charging document. We therefore agree with Appellant that the trial court abused its discretion in admitting the prior charging document. However, we must also consider whether its admission was so harmful that it deprived Appellant of his substantial rights or his right to a fair trial.

Appellant contends that he was harmed by the admission of the charging document because it contained additional details of the 2011 offense that were not contained in the 2011 judgment of conviction, and which would have allowed the jury to draw parallels between the two offenses. In particular, he points out that the charging document contained the name of the victim in the prior case, indicating that she was a female, which in turn, he believes would have allowed the jury to infer that he was in a dating "relationship" with her, just as he was with K.J.[6] In addition,

---

[6] The 2011 information alleged that "[Appellant] did then and there, intentionally, knowingly, or recklessly cause bodily injury to Crystal Meza, a member of [Appellant's] family . . . by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of the said Crystal Meza by applying pressure to the throat or neck of the said Crystal Meza . . ."

16

Appellant points out that the charging document alleged that Appellant had committed the prior offense in a manner that was substantially similar to the manner in which he allegedly assaulted K.J., i.e., by applying pressure to his victim's throat or neck. From this, Appellant concludes that the jury would have improperly focused its attention on the similarities between the two offenses.[7]

The charging document, however, was not the only piece of evidence that informed the jury of the manner in which Appellant had allegedly committed the prior offense. In particular, the 2011 judgment of conviction expressly stated that Appellant had been charged in that case with an "assault by impeding [the] breathing/circulation" of the victim. And while the charging document did provide additional information as to the sex of the victim in the prior assault, the charging document did not indicate that Appellant was in a dating "relationship" with the victim, as he was with K.J. Rather, it only alleged that they were members of the same family. As such, the 2011 information did not add any significant details to the jury's understanding of the prior assault that were not already before the jury, other than the name of the prior victim.

And finally, and perhaps most importantly, the state presented overwhelming and virtually undisputed evidence that Appellant committed the assault on K.J. In light of this evidence, we cannot say that the admission of the 2011 charging document would have had a "substantial and injurious effect or influence" on the jury's verdict. Accordingly, we conclude that the trial court's error in admitting the charging document does not warrant a reversal of Appellant's conviction. Appellant's Issue One is overruled.

---

[7] Appellant points out that during closing arguments, the prosecutor did in fact draw just such a parallel between the two offenses, noting that they were committed in a similar manner. Appellant did not object to the prosecutor's statements at trial.

17

# V.  JURY ARGUMENT

In Issue Two, Appellant contends that the trial court improperly overruled his objection that the prosecutor's closing argument alluded to facts which were not part of the record. Although we agree with Appellant that the prosecutor's argument improperly referred to matters outside the record, we conclude that the argument did not harm Appellant's case.

## A.  Background

The victim's daughter, M.J., testified at trial that in the weeks leading up to the assault, she observed injuries on her mother's face.  M.J. expressed disbelief when her mother claimed she had suffered the injuries when a door hit her, instead telling her mother that she was "not stupid," and that she knew what caused the injuries.  During closing arguments, the prosecutor informed the jury that M.J. had made a similar statement to him during the investigation, telling him that: "This is something that's been going on in my house, and I knew it.  I'm not stupid."  The prosecutor explained that M.J.'s statement persuaded him not to stop the prosecution against Appellant, despite the victim's request that he do so.  Appellant's attorney objected on the ground that any statements M.J. may have made during the State's investigation were not in evidence and were therefore not the proper subject for closing argument.  The trial court overruled the objection and cautioned the jury that they were to be the "judge of the evidence in this case."  Appellant did not ask for any additional curative instructions, and none were given.

## B.  Error Analysis

Closing argument is limited to the following four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to opposing counsel's argument; or (4) plea for law enforcement.  *See Freeman v. State*, 340 S.W.3d 717, 727 (Tex.Crim.App. 2011); *Brown*, 270 S.W.3d at 570; *Sennett v. State*, 406 S.W.3d 661, 669-70 (Tex.App.--Eastland 2013, no pet.).

Therefore, a prosecutor may not refer to matters outside the record in order to bolster a witness's testimony. *See Brown v. State*, 535 S.W.2d 640, 642 (Tex.Crim.App. 1976) (error to allow prosecutor's argument that jury could assume State's witness was credible as she had no criminal record where no evidence of such was presented at trial); *see also Ayers v. State*, 606 S.W.2d 936, 941 (Tex.Crim.App. 1980) (finding error where trial court allowed prosecutor to improperly argue that an excluded exhibit supported the testimony of a State witness).

In a very similar situation, the Court of Criminal Appeals concluded that a prosecutor improperly bolstered the credibility of a witness during closing arguments by referring to statements the witness made during the State's investigation, as such statements were clearly outside the record. *See Cannon v. State*, 668 S.W.2d 401, 403-05 (Tex.Crim.App. 1984) (en banc). In the present case, the prosecutor did exactly that, by referring to statements M.J. made during the State's investigation, which could be perceived as bolstering the trial testimony she gave on the same subject. Accordingly, the prosecutor's argument was improper and the trial court should have sustained Appellant's objection to it. However, our inquiry does not stop here, and we must next determine whether the argument was harmful to Appellant's case.

## C. Harm Analysis

Improper-argument error of this type is non-constitutional in nature, and as explained above, non-constitutional error "that does not affect substantial rights must be disregarded" in accordance with Rule 44.2(b) of the Texas Rules of Appellate Procedure. When determining whether an accused's substantial rights were affected by an improper jury argument, an appellate court must review the record as a whole to determine if the argument was extreme or manifestly improper, violative of a mandatory statute, or injected "new facts harmful to the accused into the trial proceeding." *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex.Crim.App. 2000) (en banc); *see*

*also Sennett*, 406 S.W.3d at 670. In addition, the Court of Criminal Appeals has stated that in order to constitute reversible error, the prosecutor's "remarks must have been a willful and calculated effort on the part of the State to deprive appellant of a fair and impartial trial." *Wesbrook*, 29 S.W.3d at 115; *see also Rodriguez v. State*, No. 11-17-00214-CR, 2020 WL 1887716, at *11 (Tex.App.--Eastland Apr. 16, 2020, pet. ref'd) (mem. op., not designated for publication). In conducting our analysis, we must review the prosecutor's statements "in the context of the entire argument and not in isolation." *Sennett*, 406 S.W.3d at 670.

Applying this standard, we conclude that the prosecutor's improper jury argument did not affect Appellant's substantial rights. First, the prosecutor's remark about what M.J. told him during the investigation, while worded slightly differently, was substantially similar to M.J.'s trial testimony, as she expressed the same belief in both instances, i.e., that Appellant had previously injured her mother despite her mother's protestations to the contrary. Accordingly, the prosecutor's remark about M.J.'s out-of-court statement did not inject any new, harmful facts into the trial. *See Mitchell v. State*, 636 S.W.2d 543, 545-46 (Tex.App.--San Antonio 1982, no pet.) (finding that prosecutor's argument praising detective's investigation in photographing gun used in crime did not inject new and harmful facts into evidence where the record was replete with references to the location of where the gun was found and the condition in which it was found).

Moreover, the fact that M.J. believed Appellant had previously harmed her mother was not the focal point of the State's prosecution, and was instead merely background information to explain, in part, why M.J. called the police when she heard her mother yelling on the night of the assault. Therefore, given the relative insignificance of the prosecutor's remark about M.J.'s belief, and the limited and isolated context in which it was made, we cannot view it as being "extreme or manifestly improper," or having been calculated to deprive Appellant of a fair trial.

20

And finally, combined with the overwhelming evidence of Appellant's guilt, as summarized above, we are satisfied that, despite the trial court's failure to sustain Appellant's objection or provide the jury with a curative instruction, the prosecutor's remark about M.J.'s out-of-court statement did not affect Appellant's right to a fair trial or otherwise affect his substantial rights. *See Brown*, 270 S.W.3d at 572-73 (finding no reversible error stemming from prosecutor's improper closing argument where prosecutor's statement was isolated in nature and the evidence of the defendant's guilt was of such a nature that Court could be assured that defendant would have been convicted in its absence); *see also Baker v. State*, 177 S.W.3d 113, 125-26 (Tex.App.--Houston [1st Dist.] 2005, no pet.) (finding no reversible error where the prosecutor referred to matters outside the record that were not significant to the State's case, and therefore could not have reasonably affected the jury's verdict); *see also Temple v. State*, 342 S.W.3d 572, 618-19 (Tex.App.--Houston [14th Dist.] 2010), *aff'd*, 390 S.W.3d 341 (Tex.Crim.App. 2013) (prosecutor's remarks were not the type of relentless, repeated misconduct that would deprive the defendant of his substantial rights or a fair trial and therefore did not constitute reversible error).

Appellant's Issue Two is overruled.

## VI. CONCLUSION

The trial court's judgment is affirmed.

JEFF ALLEY, Chief Justice

December 7, 2020

Before Alley, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)