**Opinion filed August 31, 2023**



In The

# Eleventh Court of Appeals

_____

## No. 11-22-00123-CR

_____

**REY AREVALO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 161st District Court**

**Ector County, Texas**

**Trial Court Cause No. B-22-0014-CR**

## O P I N I O N

A grand jury indicted Appellant, Rey Arevalo, for the offense of continuous violence against the family, a third-degree felony. TEX. PENAL CODE ANN. § 25.11(a), (e) (West Supp. 2022). After a jury trial, Appellant was convicted of the charged offense, and the jury assessed his punishment at nine years' imprisonment in the Texas Department of Criminal Justice, Institutional Division, and a $5,000 fine. The trial court sentenced him accordingly.

Appellant contends on appeal that the trial court (1) abused its discretion when it admitted evidence of extraneous offenses or bad acts committed by Appellant; (2) erred when it refused to include a lesser-included-offense instruction on the offense of assault-family violence in its charge; (3) erred when it submitted an "overly broad, non-tailored definition" of "knowingly" in its charge; (4) erred when it raised the issue of punishment enhancement in the presence of the jury at the beginning of the punishment phase; and (5) erred when it submitted a parole-law instruction in its punishment charge pursuant to Article 37.07, Section 4(c) of the Texas Code of Criminal Procedure that was incomplete. We affirm.

## I. *Factual Background*

Appellant was in a tumultuous dating relationship with the victim, Tina Torres, for approximately one year. During that time, he lived with Torres and her three children intermittently, depending on the status of their relationship at any given time.

The first incident for which Appellant was indicted occurred on May 14, 2021, when he accosted Torres at the Dollar Tree in Odessa where she worked. Surveillance video footage shows Appellant entering an "employees only" area in the back of the store, where he attacked Torres; he struck and pushed her several times. Torres testified that, during this incident, Appellant told her she was "going to be his girl and that [she] was never going to be nobody else's girl." Torres also testified that she and Appellant were separated at the time, but that they had resumed dating again some weeks after this incident. According to Torres, Appellant began texting her, saying that he wanted to work things out between them. Torres testified that the text messages scared her, because she was afraid that rebuffing

2

Appellant's advances would result in Appellant committing even more acts of violence against her.

The second incident for which Appellant was indicted occurred on August 8, 2021. On August 29, police were again called to the Dollar Tree because Torres was afraid that Appellant had entered the store. Torres reported to Officer Gary Potter of the Odessa Police Department that she was afraid because Appellant had vandalized her vehicle the day before. Appellant had appeared at her apartment and "keyed" her vehicle by scratching the paint on all sides of the vehicle and scratching the word "cheater" on the hood. Torres then showed Officer Potter a healing scar on her face and explained that Appellant had thrown her cell phone at her face during an argument between them a few weeks prior, on August 8, which resulted in a bloody cut on her cheek. Torres showed Officer Potter pictures of her injury and he captured images of these pictures with his cell phone by using an evidence collection photography application.

In a third, unindicted incident that occurred on June 25, 2021, Officer Jere Strong of the Odessa Police Department was off duty and driving his personal vehicle when Torres ran into the road in front of his vehicle, causing him to "slam on" the brakes. Officer Strong then observed that Torres was fleeing from a Hispanic male. Officer Strong exited his vehicle and spoke with Torres, who stated, "[h]e is following me and he hit me." Torres explained that Appellant had taken her keys, had thrown her cell phone at her face, had driven her vehicle after she exited it to get away from him, and was now pursuing her on foot. Officer Daniel Chapa of the Odessa Police Department responded to the scene to investigate the incident; Appellant initially provided a false name to Officer Chapa. Appellant was subsequently charged with assault and failure to identify.

After these incidents, Appellant was indicted for a single count of continuous violence against the family. Torres testified that, approximately two weeks before Appellant's trial commenced, Appellant appeared outside of her residence; he was accompanied by another woman. Torres testified that Appellant told the woman to attack Torres. Torres then fled to her friend's vehicle. Prior to trial, the trial court revoked Appellant's bond based on this incident.

## II. *Standards of Review*

A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019); *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016). This standard also applies to a trial court's decision to admit or exclude extraneous-offense evidence. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009); *Barron v. State*, 630 S.W.3d 392, 410 (Tex. App.—Eastland 2021, pet. ref'd). We will not reverse a trial court's decision to admit or exclude evidence, and there is no abuse of discretion, unless that decision lies outside the zone of reasonable disagreement. *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018); *De La Paz*, 279 S.W.3d at 343–44; *Barron*, 630 S.W.3d at 410. Furthermore, we will uphold a trial court's evidentiary ruling, even if the trial court's reasoning is flawed, if it is correct on any theory of law that finds support in the record and is applicable to the case. *Henley*, 493 S.W.3d at 93; *Dering v. State*, 465 S.W.3d 668, 670 (Tex. App.—Eastland 2015, no pet.).

Appellate review of alleged charge error is a two-step process. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012) (citing *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994)). First, we must determine whether charge error exists. *Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015) (citing *Kirsch*,

4

357 S.W.3d at 649). Second, if error does exist, we must then conduct a harm analysis to determine whether the error resulted in sufficient harm to warrant reversal. *Id.*; *Phillips v. State*, 463 S.W.3d 59, 64–65 (Tex. Crim. App. 2015); *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005); *Ybarra v. State*, 621 S.W.3d 371, 384 (Tex. App.—Eastland 2021, pet. ref'd).

Although "the jury is the exclusive judge of the facts," it is "bound to receive the law from the court and be governed thereby." TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007). The purpose of the trial court's charge is to "inform the jury of the applicable law and guide them in its application to the case." *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007) (quoting *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996)). Charge error stems from the denial of a defendant's right to have the trial court provide the jury with instructions that correctly set forth the "law applicable to the case." *Bell v. State*, 635 S.W.3d 641, 645 (Tex. Crim. App. 2021) (quoting CRIM. PROC. art. 36.14). Because the trial court is obligated to correctly instruct the jury on the law applicable to the case, it is ultimately responsible for the accuracy of its charge and the accompanying instructions. *Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018) (citing *Delgado*, 235 S.W.3d at 249). Therefore, when the charge is inaccurate, the trial court errs, and the error is subject to a harm analysis. *See Bell*, 635 S.W.3d at 645.

III. *Analysis*

As relevant to this appeal, a person commits the offense of continuous violence against the family if, during a period that is twelve months or less in duration, the person commits two or more assaults that cause bodily injury to another person who has or had a dating relationship with the defendant. *See* PENAL §§ 25.11(a), 22.01(a)(1); TEX. FAM. CODE ANN. § 71.0021(b) (West 2019) (defining

5

"dating relationship"). It is undisputed that Appellant and Torres were in a dating relationship; that the two assaults allegedly occurred within a twelve-month period is not an issue on appeal.

## A. *Extraneous-Offense Evidence*

In his first issue, Appellant contends that the trial court abused its discretion when it admitted evidence of extraneous offenses or bad acts committed by Appellant—specifically, evidence of the June 25 incident in which he was charged with assault and failure to identify and Torres' testimony concerning harassing text messages that she received from Appellant. We conclude that (1) Appellant has failed to preserve this issue for our review or he has waived it; and (2) even if Appellant had preserved this issue, the trial court did not abuse its discretion when it admitted the complained-of evidence.

### 1. *Preservation and Waiver*

To preserve a complaint for appellate review, the complaining party must present a specific, timely objection or motion to the trial court which states the specific grounds for the desired ruling. TEX. R. APP. P. 33.1(a)(1)(A); *Montelongo v. State*, 623 S.W.3d 819, 822 (Tex. Crim. App. 2021); *Burg v. State*, 592 S.W.3d 444, 448–49 (Tex. Crim. App. 2020); *see* TEX. R. EVID. 103(a). Further, the complaint and arguments raised on appeal must comport with and correspond to the objections made, if any, at trial or they are waived. TEX. R. APP. P. 33.1(a)(1)(A); *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995); *Turner v. State*, 805 S.W.2d 423, 431 (Tex. Crim. App. 1991); *Dominguez v. State*, 474 S.W.3d 688, 699 (Tex. App.—Eastland 2013, no pet.). As such, an objection asserted at trial on one ground cannot support a different contention on appeal. *Rezac v. State*, 782 S.W.2d 869,

870 (Tex. Crim. App. 1990); *Edwards v. State*, 97 S.W.3d 279, 287 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd).

A party's argument is waived as inadequately briefed if, among other reasons, the party's brief neglects to include "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i); *see Ybarra,* 621 S.W.3d at 379 n.3.

a. *The June 25 Assault and Failure to Identify*

The issue concerning the complained-of extraneous-offense evidence first arose when Appellant filed a motion in limine that sought to limit any reference to the June 25 incident. After a hearing outside the presence of the jury, the trial court denied Appellant's motion. The denial of a motion in limine is not sufficient to preserve a complaint for appellate review. *McDuff v. State*, 939 S.W.2d 607, 618 (Tex. Crim. App. 1997). Appellant's motion did not specifically seek a ruling on the admissibility of the now complained-of extraneous-offense evidence, nor did Appellant request such a ruling at the hearing on this motion. *See Gardner v. State*, No. 02-20-00018-CR, 2021 WL 4101622, at *3 n.1 (Tex. App.—Fort Worth Sept. 9, 2021, no pet.) (mem. op., not designated for publication) (holding that appellant preserved the issue for review because he specifically requested and obtained an express ruling from the trial court on the admissibility of certain evidence during the hearing on the motion in limine (citing *McDuff*, 939 S.W.2d at 618)). Therefore, absent the trial court granting Appellant a specific running objection, Appellant was required to timely and properly object to the admission of the evidence each time it was offered at trial in order to preserve his arguments and complaints for appellate review. *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003); *Nicholls v.*

*State*, 630 S.W.3d 443, 449 (Tex. App.—Eastland 2021, pet. ref'd) (citing *Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004)). Appellant failed to do so.

Before Officer Strong testified about the unindicted June 25 incident, Appellant's trial counsel objected prematurely to this testimony—on the grounds that this specific incident was not alleged in the indictment. Outside the jury's presence, the trial court explained to Appellant's trial counsel that "I can't rule on something that he hasn't asked yet. Just -- I know where he is going. But I can't rule until there is a question and an objection." After this colloquy, the State asked Officer Strong about the details of the June 25 incident; however, Appellant's trial counsel did not immediately object to Officer Strong's testimony. The record shows that the State asked Officer Strong ten questions regarding the June 25 incident before Appellant's trial counsel objected that Appellant had not been provided prior notice concerning the State's intention to offer evidence about this extraneous incident. The trial court overruled Appellant's objection.

The trial court did not rule on Appellant's first objection to this evidence, and Appellant's second objection was untimely. As Appellant notes in his brief, an objection is timely if the party makes the complaint as soon as the grounds for the objection become apparent, that is, as soon as the objecting party knows or should have known that an error has occurred. *See London v. State*, 490 S.W.3d 503, 507 (Tex. Crim. App. 2016) (citing *Gillenwaters v. State*, 205 S.W.3d 534, 537 (Tex. Crim. App. 2006)); *Hollins v. State*, 805 S.W.2d 475, 476 (Tex. Crim. App. 1991); *see also Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex. Crim. App. 2014) ("[A] party must make the complaint at the earliest possible opportunity."). Absent a timely objection—as soon as the grounds for the objection become apparent—the matter is waived. *Johnson v. State*, 878 S.W.2d 164, 167 (Tex. Crim. App. 1994).

Here, Appellant's trial counsel did not object to the questions that the State presented to Officer Strong, or to Officer Strong's answers to these questions, until after the State had asked and received answers to the questions presented. *See Juarez v. State*, 461 S.W.3d 283, 300 (Tex. App.—Texarkana 2015, no pet.) ("If a party 'fails to object until after an objectionable question has been asked and answered, . . . his objection is untimely and error is waived.'" (quoting *Grant v. State*, 345 S.W.3d 509, 512 (Tex. App.—Waco 2011, pet. ref'd)). Appellant does not explain the reasons for failing to make a timely objection. Moreover, although the grounds for Appellant's objection were apparent to Appellant's trial counsel and the trial court before the State had even asked Officer Strong any questions regarding the June 25 incident, the trial court correctly refused to rule on Appellant's premature objection until an objectionable question about the incident had been asked. Appellant's trial counsel did not object to this refusal and did not timely object to Officer Strong's testimony that followed, although he was required to do so to preserve his arguments and complaint for our review. *See Wishert v. State*, 654 S.W.3d 317, 332 (Tex. App.—Eastland 2022, pet. ref'd) (to preserve error, the objecting party must object to a trial court's refusal to rule on an objection (citing Tex. R. App. P. 33.1(a)(2)(B))).

Furthermore, testimony regarding the June 25 incident was repeatedly offered and admitted, without objection, through other witnesses, yet Appellant's trial counsel did not object to the admission of this evidence when it was offered. "A party must object each time the allegedly inadmissible evidence is offered." *Nicholls*, 630 S.W.3d at 449 (citing *Lane*, 151 S.W.3d at 193). Any purported error in the admission of complained-of evidence is cured when the same or similar evidence is offered and admitted without objection elsewhere during

Appellant's trial. *Johnson v. State*, 803 S.W.2d 272, 291 (Tex. Crim. App. 1990); *Ruiz v. State*, 631 S.W.3d 841, 864 (Tex. App.—Eastland 2021, pet. ref'd); *Nicholls*, 630 S.W.3d at 449 (citing *Valle*, 109 S.W.3d at 509).

Specifically, in addition to Officer Strong's testimony, Officer Chapa testified about the June 25 incident, including Appellant's failure to identify and the details of Appellant's assault upon Torres; the State also offered audio and video footage from Officer Chapa's body camera. Appellant's trial counsel did not object to Officer Chapa's testimony and stated he had no objection to the admission of the body camera footage. Torres also testified extensively about the June 25 incident without objection. Thus, even if the extraneous-offense evidence was erroneously admitted over a timely and proper objection, and we do not hold that it was, any error was cured by the admission, without objection, of the same or similar evidence during several other parts of the trial. *See Johnson*, 803 S.W.2d at 291; *Ruiz*, 631 S.W.3d at 864; *Nicholls*, 630 S.W.3d at 449.

Finally, even if Appellant had preserved his complaint for our review, his complaint on appeal that he was harmed has been waived due to inadequate briefing. *See* TEX. R. APP. R. 38.1(i); *Cardenas v. State*, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000); *Ybarra*, 621 S.W.3d at 379 n.3. Although Appellant thoroughly addresses the trial court's decisions to admit the complained-of evidence, he presents no argument, discussion, analysis, or authoritative citations to support his contention on appeal that the trial court's purported error caused him harm. Therefore, irrespective of having raised the issue, the omission of any substantive analysis of the harm that Appellant allegedly suffered renders the issue of harm waived. *See Cardenas*, 30 S.W.3d at 393 (the failure to brief whether alleged error caused harm waived the issue on appeal); *Chaves v. State*, 630 S.W.3d 541, 557 (Tex. App.—Houston

[1st Dist.] 2021, no pet.) (same) (citing *Wilson v. State*, 473 S.W.3d 889, 900–01 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd)); *Keller v. State*, 604 S.W.3d 214, 229–30 (Tex. App.—Dallas 2020, pet. ref'd); *see also Hall v. State*, No. 10-12-00020-CR, 2014 WL 1516881, at *6 (Tex. App.—Waco Apr. 17, 2014, no pet.) (mem. op., not designated for publication); *Delijevic v. State*, 323 S.W.3d 606, 609 (Tex. App.—Amarillo 2010, no pet.).

Appellant did not timely object to the complained-of evidence, nor does he explain his failure to do so. The same or similar evidence also was offered and admitted, without objection, through other witnesses. Further, Appellant has failed to adequately brief how the alleged error harmed him. Therefore, Appellant's claimed trial court error, if any, is waived.

### b. *Harassing Text Messages*

Appellant also attempted to object to Torres' testimony about the text messages that she received from Appellant. The State asked Torres if, after the first assault on May 14, Appellant had approached her again. Torres replied that he had. She stated that Appellant "started in-boxing [sic] [her], texting [her]. Telling [her] how much he missed [her]. How much he wanted to be back with [her] and see if [they] could work things out." The State then asked Torres if Appellant's text messages were threatening. She replied that they were not. At this juncture, the following exchange occurred between Appellant's trial counsel and the trial court:

> [DEFENSE COUNSEL]: Objection, Judge. She is talking about - -
>
> THE COURT: Talking about what your client said? That is not hearsay.
>
> [DEFENSE COUNSEL]: The text messages that - -
>
> THE COURT: Who made the text messages?

11

THE WITNESS: He did.

THE COURT: The objection is overruled.

The record demonstrates that, before Appellant's trial counsel stated a ground for the objection, the trial court interrupted and overruled the objection. Appellant's trial counsel did not object to the trial court's interruption or clarify that the basis of the objection that he intended to make was not hearsay. In fact, Appellant concedes that it is unclear on what grounds trial counsel's objection would have been made. Yet, he now suggests in his brief that his objection *could* have been made on a ground other than hearsay—such as lack of notice of extraneous offenses, "improper predicate," or Rule 403. But Appellant's trial counsel did not articulate any of these other grounds to the trial court.

The burden is on the complaining party to conform its objection to the rules that govern the preservation of issues. *See Ford v. State*, 305 S.W.3d 530, 533 (Tex. Crim. App. 2009). The grounds for an objection must be sufficiently specific to make the trial court aware of the complaint unless the specific grounds were apparent from the context. TEX. R. APP. P. 33.1(a)(1)(A); *see Gains v. State*, 966 S.W.2d 838, 840–41 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd) (holding that although the trial court interrupted appellant's trial counsel before he could state the grounds for his objection, error was preserved because the grounds were apparent from the context); *Bowers v. State*, No. 02-02-00250-CR, 2003 WL 22026428, at *7 (Tex. App.—Fort Worth Aug. 29, 2003, pet. ref'd)[1] (holding that although appellant's trial counsel was prevented from stating the grounds for his objection by the State's interruption and the trial court's subsequent instruction to the State to continue,

---

[1]*Bowers* carries a "publish" designation but apparently was never published. *Cf.* TEX. R. APP. P. 47.2(a), (b).

12

appellant's objection was not waived because the grounds were apparent from the context). Further, and as we have said, an objection asserted at trial on one ground cannot support a different contention on appeal. *See Edmondson v. State*, 399 S.W.3d 607, 611 (Tex. App.—Eastland 2013, no pet.) (citing *Rezac*, 782 S.W.2d at 870).

After the trial court interjected and overruled his attempted objection, Appellant's trial counsel did not object to the interruption or assert that his objection was based on grounds other than hearsay. Moreover, Appellant concedes on appeal that it is unclear on what grounds his objection could or would have been based. *See Gains*, 966 S.W.2d at 840–41; *Bowers*, 2003 WL 22026428, at *7. On appeal, Appellant does not assert that the trial court improperly admitted hearsay evidence— the only ground on which the trial court ruled—rather, he argues that the text messages evidence was improperly admitted as extraneous-offense evidence. We conclude, as we did above, that Appellant failed to preserve his complaint for our review. *See* TEX. R. APP. P. 33.1(a)(1)(A); *Edmondson*, 399 S.W.3d at 611.

2. *Admissibility*

Even if Appellant had preserved and adequately presented the arguments in his first issue, we conclude that the trial court did not abuse its discretion when it admitted the complained-of extraneous-offense evidence. Although evidence of extraneous offenses or bad acts is generally inadmissible to show character conformity, such evidence is admissible for a multitude of other reasons, such as to show a defendant's culpable mental state, the absence of mistake or accident, or to illustrate the nature of the relationship between a defendant and the victim. *See* TEX. R. EVID. 404(b); CRIM. PROC. art. 38.371(b), (c) (West Supp. 2022); *Gutierrez v. State*, 630 S.W.3d 270, 283 (Tex. App.—Eastland 2020, pet. ref'd)

(Rule 404(b) exceptions are "neither mutually exclusive nor collectively exhaustive . . . [and] 'Rule 404(b) is a rule of inclusion rather than exclusion.'"); *Fernandez v. State*, 597 S.W.3d 546, 565–66 (Tex. App.—El Paso 2020, pet. ref'd) ("Areas of relevant and admissible extraneous-offense evidence that complies with article 38.371 include evidence that . . . contextualizes the nature of the relationship between victim and assailant.").

a. *Evidence from the June 25 Incident*

At the hearing on Appellant's motion in limine, the State asserted that the complained-of evidence would be offered to show Appellant's culpable state of mind, his absence of mistake, or his lack of accident in assaulting Torres based on the instances alleged in the indictment, and to contextualize the nature of the relationship between Appellant and Torres. Appellant argues that, at trial, the State presented the extraneous-offense evidence as direct, substantive evidence of Appellant's guilt, which is an improper purpose for this type of evidence.

Appellant contends that, although his failure to identify in the June 25 incident may illustrate a culpable mental state as to that specific incident, this does not indicate consciousness of guilt as to the charged offense. We need not address the merits of this assertion because Appellant offers no response to the other Rule 404(b) bases to admit this evidence—intent, knowledge, absence of mistake, or lack of accident—advanced by the State. Although not alleged in the indictment, the June 25 incident was an instance of how Appellant assaulted Torres. In addition to the two incidents of assault that were alleged in the indictment, the June 25 incident occurred during the "family violence period" alleged in the indictment.

During the June 25 assault—the second in a string of assaults committed by Appellant against Torres—Appellant gave a false name when confronted by law

14

enforcement. Absence of mistake or lack of accident are two bases under which the trial court could have admitted the evidence of both Appellant's assaultive conduct against Torres and his failure-to-identify offense. *See* TEX. R. EVID. 404(b). Moreover, Appellant concedes, and we agree, that the evidence concerning the June 25 incident was admissible under Article 38.371 to illustrate the nature of the relationship between the victim (Torres) and the assailant (Appellant) in this case. *See* CRIM. PROC. art. 38.371(b); *Fernandez*, 597 S.W.3d at 565.

Because a harm analysis under these circumstances would necessarily fall into the arena of "hypotheticals"—as we have said, Appellant neglected to adequately brief the issue of harm with respect to the evidence stemming from the June 25 incident—we will refrain from doing so here. However, we reiterate that the improper admission of evidence is not reversible error if the same or similar evidence is admitted without objection elsewhere during the trial. *Johnson*, 803 S.W.2d at 291; *Ruiz*, 631 S.W.3d at 864; *Nicholls*, 630 S.W.3d at 449. Here, the evidence about the June 25 incident was admitted repeatedly throughout the trial via multiple witnesses' testimony, without objection, and as such cannot constitute reversible error.

b. *Harassing Text Messages*

Regarding Torres' testimony about the complained-of text messages, we first note that the text messages themselves were not admitted. Torres only briefly mentioned the text messages—she described that she felt Appellant cornered her in the relationship by constantly texting her to get back together with him, and that the general tenor of the messages was not threatening. After the trial court overruled Appellant's objection, only four more questions were asked of Torres that stemmed

15

from her indication and description that Appellant had constantly texted her in this manner:

> [THE STATE]: Did the text messages themselves scare you?
>
> [TORRES]: Yes.
>
> [THE STATE]: How come?
>
> [TORRES]: Because I was scared that if I would have said no, he would have just kept on and kept going, which he would have kept on going.
>
> [THE STATE]: Kept on going as far as what?
>
> [TORRES]: As far as to where it lead [sic] to now, where I have a scar on my face.
>
> [THE STATE]: Were you afraid of him the whole time you guys were dating, or just the latter part?
>
> [TORRES]: No.  I was scared of him the whole relationship.

Appellant concedes that "maybe" the text messages would have been admissible under Article 38.371 to illustrate the nature of the relationship between Appellant and Torres because the State used them to demonstrate the power-and-control dynamic that Appellant exercised over her.  But Appellant argues that, whether admissible under Article 38.371 or not, Torres' testimony about the text messages should have been subject to a Rule 403 analysis, which the trial court did not conduct.

While a trial court's Rule 403 balancing analysis need not be on the record, given Appellant's nonspecific objection to Torres' testimony regarding the text messages, we cannot assume here that the trial court conducted a Rule 403 balancing analysis.  *See Roe v. State*, 660 S.W.3d 775, 784 (Tex. App.—Eastland 2023, pet.

16

ref'd) (when *overruling a Rule 403 objection*, the trial court is assumed to have conducted the Rule 403 balancing analysis and determined that the evidence was admissible); *Greene v. State*, 287 S.W.3d 277, 284 (Tex. App.—Eastland 2009, pet. ref'd) (same). However, we conclude that the trial court would not have abused its discretion if it had performed a Rule 403 balancing analysis and in turn admitted this evidence over a Rule 403 objection. Assuming further that the trial court should have conducted a Rule 403 analysis, we nevertheless conclude that any error in the admission of Torres' testimony about the text messages was harmless.

"The trial court's erroneous admission of evidence does not result in constitutional error; therefore, it will be disregarded if the error did not affect the defendant's substantial rights." *Wishert*, 654 S.W.3d at 332 (citing TEX. R. APP. P. 44.2(b)). A substantial right is implicated when the trial court's error had a substantial or injurious effect or influence in the jury's determination of its verdict. *Id.* (citing *Schmutz v. State*, 440 S.W.3d 29, 39 (Tex. Crim. App. 2014)). In assessing the likelihood that the jury's decision was adversely affected by the claimed error, we must consider (1) the entire record, including all the evidence presented at trial; (2) the nature of the evidence supporting the jury's verdict; (3) the character of the alleged error and how it might be considered along with the other evidence in the case; (4) the trial court's instructions to the jury; and (5) whether the evidence of the defendant's guilt is overwhelming. *Id.* (citing *Motilla v. State*, 78 S.W.3d 352, 355–58 (Tex. Crim. App. 2002)). In making this determination, we are not concerned with whether there was sufficient evidence on which the defendant could have been convicted, but rather whether there is a reasonable possibility that the erroneously admitted evidence might have contributed to the defendant's conviction. *Id.* (citing *Lopez v. State*, 288 S.W.3d 148, 178 (Tex. App.—Corpus Christi–Edinburg 2009,

pet. ref'd)). "Therefore, reversal is not required if, after reviewing the entire record, we have fair assurance that the error did not influence the jury's verdict or had only a slight effect." *Id.* at 332–33.

"At the outset, our harm analysis requires that we first determine if the danger of unfair prejudice substantially outweighed the probative value of the challenged evidence, and then, if it did, whether the admission of the extraneous evidence affected the defendant's substantial rights." *Id.* at 333 (citing *Colvin v. State*, 54 S.W.3d 82, 85 (Tex. App.—Texarkana 2001, no pet.)); *see* TEX. R. EVID. 403.

"Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence [is] more probative than prejudicial." *Walter v. State*, 581 S.W.3d 957, 978 (Tex. App.—Eastland 2019, pet. ref'd) (quoting *Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002)). An analysis under Rule 403 includes, but is not limited to, the following factors: (1) the probative force of the evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence that has already been admitted. *Garcia v. State*, 630 S.W.3d 264, 268 (Tex. App.—Eastland 2020, no pet.) (citing *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006)); *see* TEX. R. EVID. 403; *Wishert*, 654 S.W.3d at 333.

Appellant concedes that Torres' testimony is probative and did not consume an inordinate amount of time to present. The jury was not likely to give this testimony undue weight—it was hardly referred to during trial, and the State relied

18

on and advanced other extensive evidence of Appellant's guilt in its closing arguments. Contrary to Appellant's assertions, it is reasonable to conclude that this evidence was neither confusing to the jury nor suggestive of an improper decision-making basis because it was clearly related to the nature of Torres' relationship with Appellant. This evidence also provided a different perspective for the jury to consider regarding Torres' relationship with Appellant and it was not repetitive of other admitted evidence.

Appellant argues that, because the referenced messages were not themselves admitted and because he had no prior notice of the State's intention to use these messages from which he could have prepared a defense, the jury was not properly equipped to evaluate its probative force. But the evidence at issue is not the text messages themselves; rather, it is Torres' *testimony* that even though the text messages were not threatening, the constant and harassing nature of the texts illustrated her fear of Appellant during their intermittent dating relationship. As such, the jury *was* equipped to evaluate the probative force of Torres' testimony regarding the relationship that she had with Appellant. Weighing all of the above factors, we conclude that the trial court would not have abused its discretion if it had performed a Rule 403 balancing analysis and in turn admitted this evidence over a Rule 403 objection. *See Wishert*, 654 S.W.3d at 334.

As an additional consideration, we note that the trial court instructed the jury in the guilt-innocence charge that the jury was not to consider extraneous-offense evidence for any improper purpose. Absent evidence to the contrary, and here there is none, we presume that a jury follows the trial court's instructions regarding the consideration of admitted evidence, which mitigates any potential harm to

Appellant. *Id.* (citing *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009)); *Barron*, 630 S.W.3d at 412–13.

For all of the foregoing reasons, we overrule Appellant's first issue.

B. *Lesser-Included Offense Instruction*

In his second issue, Appellant asserts that the trial court erred when it refused to include a lesser-included offense instruction on the offense of assault-family violence in its charge.

Appellant concedes that he did not object to the charge or to the omission of this instruction. Nor did he request that a lesser-included instruction on assault-family violence be submitted in the charge. Still, he contends that under *Almanza*, he may raise this issue for the first time on appeal if egregious harm can be shown. *See Ngo*, 175 S.W.3d at 743; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). We disagree.

"[T]he defense may not claim error successfully on appeal due to the omission of a lesser included offense if the defense refrained from requesting one." *Delgado*, 235 S.W.3d at 250 (quoting 43 GEORGE E. DIX & ROBERT O. DAWSON, CRIMINAL PRACTICE AND PROCEDURE § 36.50 at 202 (Supp. 2006)). And before an egregious harm analysis under *Almanza* applies to charge "error," we must determine that error exists in the first place. *See Tolbert v. State*, 306 S.W.3d 776, 781–82 (Tex. Crim. App. 2010) (citing *Posey v. State*, 966 S.W.2d 57, 61 (Tex. Crim. App. 1998)); *Ybarra*, 621 S.W.3d at 384 (citing *Phillips*, 463 S.W.3d at 64).

Here, not only did Appellant waive any complaint on appeal by failing to object to the charge, no error occurred, as Appellant suggests, because the trial court had no duty to sua sponte instruct the jury on a lesser-included offense. *See Tolbert*, 306 S.W.3d at 780–81; *Delgado*, 235 S.W.3d at 249–50. The trial court has a

statutory duty to submit a charge that sets forth the law applicable to the case. *See* CRIM. PROC. art. 36.14; *Posey*, 966 S.W.2d at 62. However, defensive issues are not law "applicable to the case" unless the defendant either timely requests the submission of the issue in the charge or objects to its omission. *Tolbert*, 306 S.W.3d at 779–80 (citing *Posey*, 966 S.W.2d at 62). As the Court of Criminal Appeals has explained, "lesser-included instructions are like defensive issues and . . . a trial court is not statutorily required to *sua sponte* instruct the jury on lesser-included offenses because these issues 'frequently depend upon trial strategy and tactics.'" *Id.* at 780 (quoting *Delgado*, 235 S.W.3d at 249–50).

Absent a request by Appellant to include in the charge an instruction on the lesser-included offense of assault-family violence, such an instruction would not constitute law "applicable to the case," and the trial court had no sua sponte or statutory duty to submit it. *Tolbert*, 306 S.W.3d at 779–81. In this case, Appellant neither requested that a lesser-included instruction be included in the trial court's charge, nor did he object to its omission.

For these reasons, we overrule Appellant's second issue.

C. *Overbroad Definition of "Knowingly"*

In his third issue, Appellant contends that the trial court erred when it included an overbroad, non-tailored definition of the culpable mental state of "knowingly" in its charge. Specifically, Appellant argues that the trial court erroneously instructed the jury on all three conduct elements, when instead it should have defined "knowingly" to only include two of the conduct elements—"result of conduct" and "circumstances surrounding the conduct." Accordingly, Appellant reasons, the trial court erred when it instructed the jury that, to convict Appellant, the required

21

culpable mental state applied to, and improperly included, the other conduct element—"nature of his conduct."

We agree with Appellant that the submitted definition of "knowingly" is overbroad. But we conclude that the complained-of error did not egregiously harm Appellant. *See, e.g.*, *Costilla v. State*, 650 S.W.3d 201, 222 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (holding that the trial court's erroneous definition of "intentionally" and "knowingly" in its charge in a prosecution for continuous violence against the family did not harm appellant); *see also Rice v. State*, No. 11-22-00032-CR, 2023 WL 5109158, at *3–6 (Tex. App.—Eastland Aug. 10, 2023, no pet. h.) (mem. op., not designated for publication) (holding that the trial court's overbroad definition of "recklessly" in its charge, in a prosecution where appellant was convicted of the lesser-included offense of manslaughter, that included improper conduct elements did not egregiously harm appellant); *Estorga v. State*, No. 11-21-00134-CR, 2023 WL 1826816, at * 3–6 (Tex. App.—Eastland Feb. 9, 2023, no pet.) (mem. op., not designated for publication) (the inclusion of "nature of conduct" language in the definitions of "intentionally" and "knowingly" when appellant was charged with a "result of conduct" offense did not egregiously harm appellant).

The Penal Code prescribes four culpable mental states—intentionally, knowingly, recklessly, and criminally negligent—and three possible conduct elements—nature of the conduct, result of the conduct, and circumstances surrounding the conduct. PENAL § 6.03 (West 2021); *see Young v. State*, 341 S.W.3d 417, 423 (Tex. Crim. App. 2011). When unspecified conduct is criminalized because of its result, the culpable mental state must be applied to that result. *Price v. State*, 457 S.W.3d 437, 441 (Tex. Crim. App. 2015). An offense may contain any

one or more of these conduct elements that alone or in combination form the overall behavior that the legislature intended to criminalize, and it is these essential conduct elements to which a culpable mental state must apply. *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989). A trial court errs if it fails to limit in its charge the language of the applicable culpable mental state to the appropriate conduct element. *Price*, 457 S.W.3d at 441; *Cook v. State*, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994).

Appellant asserts that the statutory language of Section 25.11 provides that the offense of continuous violence against the family consists of a "result of conduct" element *and* a "circumstances surrounding the conduct" element because it requires that a person must cause bodily injury to be inflicted upon a person who fits within the statutory definition of "family." Contrary to Appellant's assertion, the offense of continuous violence against the family is a result-of-conduct offense only.[2] *See Price*, 457 S.W.3d at 442–43; *Rubis*, 666 S.W.3d at 839–40 ("[T]he *actus reus* of [continuous violence against the family] is the commission of an offense that, by its own terms, is a 'result of conduct' offense, and the jury should be instructed accordingly.").

In this case, the abstract portion of the trial court's charge defined "knowingly" to include all three conduct elements:

---

[2]When determining which conduct element should be included in the culpable mental state instruction, we look to the gravamen of the offense. *Rubis v. State*, 666 S.W.3d 837, 839 (Tex. App.—Dallas 2023, no pet.) (citing *Price*, 457 S.W.3d at 441). Continuous violence against the family is defined as the repeated commission of a constituent offense against a certain class of persons as defined by statute. *Id.* "The constituent offense—assault causing bodily injury—does not prohibit specific conduct, but instead criminalizes the result of the defendant's actions." *Id.* Neither continuous violence against the family nor its constituent offense can occur without the victim sustaining bodily injury as a result of the defendant's conduct. Because the gravamen of continuous violence against the family is the repeated injury to the victim that results from the defendant's unspecified conduct, the culpable mental states apply to the defendant's conduct, rather than to its nature. *Id.* at 839–40.

A person acts knowingly, or with knowledge, *with respect to the nature of his conduct or to circumstances surrounding his conduct* when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, *with respect to a result of his conduct* when he is aware that his conduct is reasonably certain to cause the result.

(Emphasis added). We conclude that the trial court erred when it submitted the definition of "knowingly" in this form because the charged offense is only a result-of-conduct offense; the trial court was required to limit the culpable mental states to the *result* of Appellant's conduct. *See Price*, 457 S.W.3d at 441 (citing *Cook*, 884 S.W.2d at 491).

As noted, Appellant did not make a timely and proper objection to the charge error that he now complains about on appeal; therefore, reversal is only required if the error resulted in egregious harm.[3] *Villareal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015). "Charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Id.* "Egregious harm is a 'high and difficult standard' to meet, and such a determination must be 'borne out by the trial record.'" *Id.* (quoting *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013)). "An egregious harm determination must be based on a finding of actual rather than theoretical harm." *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015) (quoting *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011)).

Egregious harm is only shown when the error "created such harm that [the appellant] 'has not had a fair and impartial trial.'" *Almanza*, 686 S.W.2d at 171; *see*

---

[3]We note that Appellant's briefing of the alleged *harm* caused by this charge error is inadequate, in a similar manner to that of his first issue. TEX. R. APP. P. 38.1(i). But because we have found that charge error exists, we will analyze what harm, if any, that error may have caused Appellant.

*also Villareal*, 453 S.W.3d at 433 (reversal is only required if the error was so egregious and created such harm that the defendant was deprived of a fair and impartial trial). To determine if the complained-of charge error egregiously harmed Appellant, the Court of Criminal Appeals in *Almanza* identified four factors that we should weigh and consider: (1) the charge as a whole; (2) the state of the evidence, including the contested issues and the weight of the probative evidence; (3) the arguments of counsel; and (4) all other relevant information in the record that may inform our analysis. *Cosio*, 353 S.W.3d at 777 (citing *Hutch*, 922 S.W.2d at 171); *Almanza*, 686 S.W.2d at 171. These factors guide our analysis.

   1. *The Charge as a Whole*

  The first *Almanza* factor requires that we review the trial court's charge in its entirety. "Where the application paragraph correctly instructs the jury, an error in the abstract instruction is not egregious." *Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999); *see Kuhn v. State*, 393 S.W.3d 519, 529 (Tex. App.—Austin 2013, pet. ref'd). In the application paragraph of its charge, the trial court provided the following instruction:

> Now if you find from the evidence beyond a reasonable doubt that on or about the 14th day of May, 2021, in Ector County, Texas, the Defendant, REY AREVALO, hereinafter styled the Defendant, did then and there intentionally, knowingly, and recklessly cause bodily injury to Tina Torres, a person with whom the defendant has or has had a dating relationship, as described in Section 71.0021(b) of the Texas Family Code, by striking her on or about the head with his hand, and on or about the 8th day of August, 2021, the defendant intentionally, knowingly, and recklessly caused bodily injury to Tina Torres, a person with whom the defendant has or has had a dating relationship, as described by Section 71.0021(b) of the Texas Family Code, by striking her on or about the face with a cell phone, and the conduct by the defendant occurred during a period that was 12 months or less in

25

duration, then you will find the defendant guilty of the offense of continuous violence against the family as charged in the Indictment.

Because the application paragraph of the charge tracks the statutory language for the charged offense and properly instructs the jury to apply the applicable culpable mental states *to the result* of Appellant's conduct, we conclude that the charge when read in its entirety and in proper context does not weigh in favor of finding that Appellant suffered egregious harm. *See Medina*, 7 S.W.3d at 640; *Kuhn*, 393 S.W.3d at 529; *see also* PENAL §§ 25.11(a), 22.01(a)(1).

### 2. *The State of the Evidence*

The second *Almanza* factor focuses on the evidence presented at trial. Appellant did not testify. His defensive strategy—as revealed by his trial counsel's cross-examinations of the State's witnesses—was that Torres was not truthful about Appellant assaulting her and that Torres was the first aggressor in many of the altercations that occurred between them. Notably, Appellant's defensive strategy did not include that he did not act with the requisite culpable mental states in these altercations. Therefore, because the charge error did not relate to a contested issue at trial, we conclude that this factor does not weigh in favor of finding that Appellant suffered egregious harm. *See, e.g., Green v. State*, No. 11-21-00097-CR, 2023 WL 1825168, at *7 (Tex. App.—Eastland Feb. 9, 2023, no pet.) (mem. op., not designated for publication) (holding that the second *Almanza* factor weighed against a finding of egregious harm when the charge error did not relate to appellant's trial strategy).

### 3. *The Arguments of Trial Counsel*

The third *Almanza* factor pertains to the arguments of trial counsel. In weighing this factor, we must determine whether any statements made by the State,

26

Appellant's trial counsel, or the trial court exacerbated or ameliorated the complained-of charge error. *Arrington*, 451 S.W.3d at 844.

Both parties focused on Torres' credibility regarding the assaults that Appellant committed against her and her relationship with Appellant. The State explicitly oriented its closing arguments on witness credibility and stated that the main issue for the jury to consider was "do you believe Tina Torres?" Similarly, Appellant's trial counsel emphasized the jury's responsibility "to decide what kind of makes sense and what doesn't make sense" in light of "conflicting statements from the complaining witnesses." Neither party's closing arguments exacerbated the charge error. Therefore, we conclude that this factor also does not weigh in favor of finding that Appellant suffered egregious harm.

### 4. *Other Relevant Information in the Record*

Finally, the fourth *Almanza* "catch-all" factor requires that we consider any other relevant information in the record that would assist in our determination of whether Appellant suffered egregious harm as a result of the complained-of charge error. *Gelinas v. State*, 398 S.W.3d 703, 707 (Tex. Crim. App. 2013); *Almanza*, 686 S.W.2d at 171.

The record shows that the jury never inquired of or submitted any note or other form of communication to the trial court regarding the complained-of definition. *See Lopez v. State*, 314 S.W.3d 70, 73 (Tex. App.—Waco 2010, no pet.); *Shaver v. State*, 985 S.W.2d 284, 292 (Tex. App.—Beaumont 1999, pet. ref'd). Therefore, it is unlikely that the jury was influenced or confused by the trial court's instructions. The jury returned its verdict of guilty after deliberating for less than twenty minutes, which suggests that they found the State's evidence to be compelling and Appellant's defenses to be unpersuasive. Further, Appellant does not point to, nor

have we found, other information in the record that would either assist in our analysis or support a finding of egregious harm. Because there is no other relevant information in the record before us that shows or suggests confusion or that the jury's verdict was influenced or affected by the complained-of instruction, we conclude that the fourth *Almanza* factor does not weigh in favor of finding that Appellant suffered egregious harm.

Based on this record, we conclude that Appellant did not suffer egregious harm resulting from the overbroad and non-tailored definition of the culpable mental states in the abstract portion of the trial court's charge. *See Costilla*, 650 S.W.3d at 222. Accordingly, we overrule Appellant's third issue.

D. *Discussion of Punishment Enhancement in the Jury's Presence*

In his fourth issue, Appellant contends that the trial court erred when it raised the issue of Appellant's punishment enhancement in the presence of the jury at the beginning of the punishment phase. The State responds that Appellant has, once again, waived his complaint because he did not object in the trial court and, even if Appellant had preserved the issue, the record does not indicate that this "discussion" influenced the jury's punishment verdict.

As the punishment phase commenced, the following exchange occurred:

> THE COURT: Does the State care to -- is there an enhancement that needs to be read?

> [THE STATE]: There is, Your Honor. I actually don't have it on me. And I'm not sure if our witness is here.

> THE COURT: You better find out.

> [DEFENSE COUNSEL]: Well, Your Honor, that wasn't filed prior to the start of this proceeding, which is at least one requirement for the enhancement to at least be filed.

THE COURT: Let me look.

[DEFENSE COUNSEL]: And we --

THE COURT: Let me check my file.

(PAUSE)

THE COURT: I have [sic] don't see an enhancement.

[DEFENSE COUNSEL]: Well, Your Honor, we would object to that. It has to be filed before we start this proceeding. It just has to be.

THE COURT: And you are correct. Then no -- there has been no intent to enhance filed in this that I can see, unless the State has a file stamped copy they want to show me.

[THE STATE]: Mr. Eckles went to go look. The only thing, I guess, Your Honor, if that would save the Court and our jurors some time. If we could just have a few minutes to get with counsel to see if they want to stipulate to any priors or anything like that. We could probably make this very expedient.

THE COURT: Two minutes?

[DEFENSE COUNSEL]: Two minutes, Judge.

THE COURT: Ladies and gentlemen, they said two minutes, so I will hold them to it. All rise for the jury. You can go back to the jury room for two minutes.

A trial court improperly comments on the weight of the evidence when it implies approval of the State's argument, indicates disbelief in the defense's position, or diminishes the credibility of the defense's approach to the case. *See Joung Youn Kim v. State*, 331 S.W.3d 156, 160 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). The alleged improper commentary must be material to rise to the level of reversible error. *See Barron*, 630 S.W.3d at 406 ("[T]o find reversible error on the ground of improper judicial conduct or comments, we must conclude (1) that

29

some form of judicial impropriety was in fact committed and (2) that such impropriety resulted in probable prejudice to the complaining party." (citing *Dockstader v. State*, 233 S.W.3d 98, 108 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd))). The Court of Criminal Appeals has held that judicial comments which "taint[] [the defendant's] presumption of innocence in front of the venire" are fundamental errors that require no objection. *Blue v. State*, 41 S.W.3d 129, 132 (Tex. Crim. App. 2000) (plurality op.); *see Jasper v. State*, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001).

In support of his contention that he may raise this issue for the first time on appeal, Appellant posits that the above conversation between the trial court and trial counsel is analogous to the exchange that occurred between the trial court and a witness in *Proenza v. State*, such that Appellant's failure to object in this instance should be excused. 541 S.W.3d 786 (Tex. Crim. App. 2017). We disagree.

In *Proenza*, the Court of Criminal Appeals held that claims of improper judicial comments raised under Article 38.05 are not forfeitable by inaction. 541 S.W.3d at 798–99 (citing Crim. Proc. art. 38.05). Importantly, the judicial commentary in *Proenza* consisted of pointed, substantive questioning of a witness by the trial court, questioning which bore on crucial defensive testimony. *Id.* at 789–90. This is significantly dissimilar to the trial court's interjection in this case. Here, the discussion between the trial court and trial counsel concerned whether there was an enhancement to be read to the jury and whether the State had filed a notice of its intention to enhance Appellant's punishment. There was no discussion of the propriety of the enhancement or how it would or could affect the outcome of the punishment phase. Nor did the trial court comment about what effect, if any, the enhancement would or could have on the jury's punishment recommendation. The

trial court simply inquired as to whether an enhancement allegation would be presented to the jury before the punishment evidence was presented, which is an appropriate inquiry and procedurally correct. We conclude that *Proenza* is inapposite, and therefore Appellant was required to preserve this issue for appeal. Accordingly, we hold that, by failing to object to this "discussion" in the trial court, Appellant did not preserve this complaint for our review.

However, even assuming that this complaint was preserved for our review, we conclude that the trial court did not improperly comment on the weight of the evidence.[4] Appellant contends that the jury was informed during voir dire that a person's punishment range may sometimes be enhanced (which is a proper inquiry and subject of discussion)—therefore, he reasons, the jury was aware of how one's prior convictions could affect the punishment range.

During the punishment phase, the State offered, and the trial court admitted, the judgments of Appellant's prior convictions, which Appellant's trial counsel stipulated to. Appellant also testified that he had been convicted of other offenses and imprisoned in the past. The trial court's discussion of enhancements created, according to Appellant, a scenario in which it appeared to the jury that Appellant had escaped the consequences of a prior conviction based on a technicality. The trial court did not instruct the jury to disregard the enhancements "discussion." As such, Appellant concludes that this undue impression could have caused the jury to recommend a more severe sentence; the jury recommended a sentence of nine years'

---

[4]Although Appellant also asserts that the trial court improperly lectured Appellant's trial counsel and displayed a degree of animus against him, the statements made by the trial court of which Appellant complains were made *after* the jury returned its punishment verdict. Appellant presents no argument other than the trial court improperly commented on the weight of the evidence. Despite Appellant's assertion, we cannot conceive of how a trial court's post-sentencing comments could have improperly affected or influenced the jury's punishment deliberations and subsequent verdict.

imprisonment when the maximum punishment available for his conviction was ten years' imprisonment.

"In his discretion, a judge may lawfully provide guidance and manage the presentation of evidence without abandoning his role as a neutral and independent arbiter." *Barron*, 630 S.W.3d at 408 (citing *Strong v. State*, 138 S.W.3d 546, 552 (Tex. App.—Corpus Christi–Edinburg 2004, no pet.)). We do not agree with Appellant's assertion that the trial court's limited discussion concerning whether an enhancement allegation should have been presented to Appellant before the punishment evidence was presented (which, if one is alleged, it must be), and whether the State had filed a notice of its intention to enhance Appellant's punishment constituted improper judicial commentary.

We hold that Appellant did not preserve this issue for our review and, even if he had, the trial court did not improperly comment on the weight of the evidence or otherwise err when it mentioned the issue of Appellant's punishment enhancement in the presence of the jury at the beginning of the punishment phase. Accordingly, we overrule Appellant's fourth issue.

E. *Article 37.07 Parole Law Instruction*

In his fifth issue, Appellant contends that the trial court erred when it submitted an incomplete Section 4(c) parole-law instruction in its punishment charge. We agree. However, we conclude that Appellant was not egregiously harmed by this error.

Article 37.07 sets out the parole law instructions to be included in the trial court's punishment charge. *See* CRIM. PROC. art. 37.07, § 4(a)–(c) (West Supp. 2022). With the exception of certain offenses or affirmative findings that are not applicable here, the particular parole law instruction to be submitted is determined

by either (1) the degree of felony offense for which the defendant has been convicted at trial or (2) the degree of felony for which the convicted offense is "punishable." *See id.* Here, Section 4(c) provides the instruction applicable to offenses punishable as a felony of the third degree, including the offense for which Appellant was convicted. *See id.* art. 37.07, § 4(c).

The particular instruction in the trial court's punishment charge about which Appellant complains reads as follows:

> Under the law applicable in this case the defendant, if sentenced to a term of imprisonment, the defendant will not become eligible for parole until the actual time served equals one-fourth the sentenced [sic] imposed. Eligibility for parole does not guarantee that parole will be granted.

By comparison, the applicable Section 4(c) parole law instruction states:

> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, the defendant will not become eligible for parole until the actual time served *plus any good conduct time* earned equals one-fourth of the sentence imposed. Eligibility for parole does not guarantee that parole will be granted.

CRIM. PROC. art. 37.07, § 4(c) (emphasis added).

We agree with Appellant that the trial court erred when it did not include the phrase "plus any good conduct time" in the parole law instruction. "The trial court must follow and only submit the language set out in the controlling statute verbatim; no deviation is permitted." *Alaniz v. State*, 648 S.W.3d 657, 662 (Tex. App.—Eastland 2022, no pet.) (citing *Luquis v. State*, 72 S.W.3d 355, 363 (Tex. Crim. App. 2002)); *see also Martinez v. State*, No. 11-21-00051-CR, 2023 WL 3010970, at *3 (Tex. App.—Eastland Apr. 20, 2023, pet. ref'd) (mem. op., not designated for publication).

Because we have determined that charge error exists, we turn now to the appropriate harm analysis. *See Ngo*, 175 S.W.3d at 743. Appellant did not object to the trial court's punishment charge, therefore we will, again, review the charge error under the *Almanza* "egregious harm" standard and related factors. *Villareal*, 453 S.W.3d at 433; *Madden v. State*, 242 S.W.3d 504, 513 (Tex. Crim. App. 2007).

1. *The Almanza Factors*

Under the first *Almanza* factor, we review the punishment charge in its entirety. The Court of Criminal Appeals has stated that "the over-all purpose of the [parole] instruction is to inform jurors of these concepts as a general proposition, but to prohibit the jury from using its notions of [those concepts] in any calculus in assessing the appropriate punishment." *Luquis*, 72 S.W.3d at 360. Nevertheless, charge error may be ameliorated by the inclusion of other instructions in the same charge.

In keeping with that purpose, the punishment charge in this case informed the jury of the applicable range of punishment to be considered by them for the charged offense (a third-degree felony), instructed the jury to limit its punishment deliberations to the law and the evidence presented in the case, and further instructed the jury that, in assessing Appellant's punishment, the jury was *not* to consider (1) the extent to which "good conduct time" could be awarded to or forfeited by Appellant or (2) the manner in which the parole law may be applied to Appellant. The jury was also instructed that Appellant's eligibility for parole did not assure that he would be granted parole. Absent evidence to the contrary, and in the case before us there is none, we presume that the jury understood and followed the trial court's instructions. *Alaniz*, 648 S.W.3d at 663 (citing *Taylor v. State*, 332 S.W.3d 483, 492 (Tex. Crim. App. 2011)); *see also Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim.

App. 2005); *Smith v. State*, 631 S.W.3d 484, 500 (Tex. App.—Eastland 2021, no pet.).

Moreover, unlike the circumstances in *Martinez* and *Alaniz* (which concerned the improper submission of repealed and, therefore erroneous, parole law instructions), the error that we are confronted with here pertains to the *omission* of only a phrase of the applicable Section 4(c) instruction, which describes how any "good conduct time" may affect parole eligibility calculations. Because the jury was instructed, in assessing Appellant's punishment, not to consider how the parole law might affect or be applied to Appellant, we presume that the jury would not have considered how the phrase "good conduct time" could have affected Appellant's future parole eligibility calculations if that phrase had been included in the charge. Further, it was unlikely that the punishment charge as submitted, when considered in its entirety, would either confuse, influence, or mislead the jury. Therefore, we conclude that the first *Almanza* factor does not weigh in favor of finding that Appellant suffered egregious harm. *See Martinez*, 2023 WL 3010970, at *4; *Alaniz*, 648 S.W.3d at 663.

The second *Almanza* factor focuses on the evidence presented at trial. Appellant does not challenge the sufficiency of the evidence to support the punishment that was imposed. Nevertheless, the record is replete with evidence that Appellant abused Torres physically and emotionally throughout the tumultuous year that they were intermittently dating.

Appellant testified at the punishment phase. He apologized to Torres and her daughter for his conduct but denied responsibility for nearly all of it, except for his assault on Torres that was captured on video. He also minimized his responsibility for his prior criminal convictions, stating that he "felt like none of those chargers in

[his] past matter because none of them had to do with family violence." Appellant even denied that he was guilty of those prior offenses and claimed that he only pleaded guilty because he "had so much back time [he] signed for time served." Thus, the punishment evidence presented by the State and Appellant's testimony indicates that Appellant is unable or unwilling to accept responsibility for his egregious conduct, which bodes poorly for his ability or willingness to rehabilitate, but instead is indicative of his proclivity to reoffend. *See Martinez*, 2023 WL 3010970, at *5; *see also Alaniz*, 648 S.W.3d at 663. Considering the entire record, including Appellant's criminal history, the jury could have reasonably concluded that a nine-year sentence was an appropriate punishment for Appellant's conduct. Therefore, we conclude that the second *Almanza* factor does not weigh in favor of finding that Appellant suffered egregious harm.

The third *Almanza* factor pertains to the arguments of trial counsel. Here, trial counsel's arguments did not exacerbate the charge error. The record before us shows that neither trial counsel emphasized the purpose of parole, the manner in which it would apply to or affect Appellant, or how "good conduct time" may have affected Appellant's term of incarceration. Interestingly, Appellant's trial counsel briefly discussed parole generally by stating that "[p]arole is an option . . . [b]ut you are not allowed to consider it. You are just allowed to know about it. . . . And you are allowed to know that a Defendant sentenced to TDCJ, the Institutional Division, they can get good credit. And, yes, that credit can be taken away." If anything, the arguments of Appellant's trial counsel ameliorated the "good conduct time" omission in the trial court's punishment charge by mentioning the precise information that Appellant now complains was erroneously omitted. Therefore, we

conclude that the third *Almanza* factor does not weigh in favor of finding that Appellant suffered egregious harm. *See Alaniz*, 648 S.W.3d at 663.

Finally, the fourth *Almanza* "catch-all" factor requires that we consider any other relevant information in the record that would assist in our determination of whether Appellant suffered egregious harm as a result of the charge error. *See Gelinas*, 398 S.W.3d at 707; *Almanza*, 686 S.W.2d at 171. The record does not indicate that the jury, during its punishment deliberations, ever inquired of or submitted any note or other form of communication to the trial court regarding "good conduct time," the parole law, or how either might apply to or affect Appellant. *See Alaniz*, 648 S.W.3d at 664 (citing *Lopez*, 314 S.W.3d at 73). Thus, the record does not show, or even suggest, that the jury (1) was influenced, confused, or misled by the instructions in the punishment charge or (2) even considered or mentioned the parole law's application or effect during deliberations. *See Hooper v. State*, 255 S.W.3d 262, 272–73 (Tex. App.—Waco 2008, pet. ref'd). Further, Appellant does not point to, nor have we found, other information in the record that would assist in our egregious-harm determination. Because there is no other relevant information in the record that shows or suggests that the jury's punishment recommendation was influenced or affected by the charge error, we conclude that the fourth *Almanza* factor also does not weigh in favor of finding that Appellant suffered egregious harm.[5]

---

[5]Appellant's brief harm analysis appears to urge that we consider the numerous other alleged errors in the trial court's guilt-innocence charge and in other parts of the trial in conjunction with the punishment charge error to find that Appellant was egregiously harmed under this, his fifth issue. To the extent that Appellant's contention is that the cumulative error doctrine entitles him to a reversal, we disagree. That doctrine provides relief only when constitutional errors so fatally infect the trial that they violate the principle of fundamental fairness. *See Estrada v. State*, 313 S.W.3d 274, 311 (Tex. Crim. App. 2010). Further, this doctrine does not apply to non-errors. *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999).

We hold that the trial court erred when it omitted from its punishment charge the phrase "plus any good conduct time" in the parole law instruction. But we conclude that this error does not result in a level of egregious harm such that Appellant was deprived of a fair and impartial trial. Accordingly, we overrule Appellant's fifth issue. *See Martinez*, 2023 WL 3010970, at *6; *Alaniz*, 648 S.W.3d at 664.

IV. *This Court's Ruling*

We affirm the judgment of the trial court.

W. STACY TROTTER

JUSTICE

August 31, 2023

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.